CHELSEA EXCHANGE BANK, Respondent, *v.* METTA WEINSTEIN, Appellant, Impleaded with DUANE CORPORATION and Others, Defendants.

Second Department, July 25, 1929.

*Marton M. Mandel* [*Charles L. Hoffman* and *Henry A. Friedman* with him on the brief], for the appellant.

*David Brady* [*Toney A. Hardy* with him on the brief], for the respondent.

YOUNG, J. The action was brought to foreclose two mortgages, aggregating $67,500, covering twenty-seven lots at Long Beach. The complaint is the usual one for foreclosure. The default alleged is in the failure to pay all installments of interest due beginning May 18, 1927, and semi-annually thereafter, and it is alleged that there is due the principal sums on the two mortgages, with interest from November 18, 1926. The answer of the appellant is in substance, so far as material on this appeal, a general denial and a separate defense in which is set up an agreement between appellant and one Louis Kopple on August 12, 1925, and it is alleged in substance that the mortgages in question were given by Kopple without the appellant's knowledge or consent and in violation of the agreement; that plaintiff, at the time of and before the execution of said mortgages, had full and complete knowledge of the agreement, and further, that no part of the moneys or property received from plaintiff in connection with the mortgages was received by or used for the appellant or in her interest.

On August 12, 1925, appellant was the owner of property at Long Beach, including that covered by plaintiff's mortgages. On that day she made an agreement with the defendant Kopple which recites her ownership of the property; that it is subject to various mortgages and liens, the second mortgage being a blanket mortgage to secure approximately $80,000 of promissory notes given by Louis Weinstein & Bro., Inc.; that foreclosure proceedings are pending; that default had been made in the payment of the notes by the Weinstein corporation for which the second mortgage had been given; and that the mortgagee was empowered to foreclose the mortgage; that the appellant was not financially able to protect her equity in the property and had requested Kopple to procure the necessary financial assistance, etc. It was thereupon agreed that Kopple should purchase or cause to be purchased by assignment or procure a satisfaction of the first mortgages under foreclosure, and would either purchase the second mortgage, given to one Hopkins as trustee for creditors, or purchase the claims of said creditors at the lowest price for which they could be procured; that the appellant should deliver to Kopple a full warranty deed free of all incumbrances except the mortgages, unpaid taxes and costs of foreclosure, on or before August 12, 1925; that Kopple, immediately upon acquiring title, should use his best efforts in conjunction with the appellant " to dispose of said lots either at public or private sale, at the best price that he can procure therefor, and that out of the moneys realized by him from the sale of said lots he is first to reimburse himself for any and all moneys expended by him in the purchase of the mortgages, claims of creditors or in satisfaction of any other liens or encumbrances against said property, as well as any and all expenses incurred in the purchase or sale of said property in addition to any indebtedness owing by Louis Weinstein, and/or Louis Weinstein & Bro., Inc., and Louis Weinstein Corp., to the Duane Corporation, which said indebtedness the said party of the second part is hereby specifically authorized to pay out of the proceeds, and that the balance then remaining as a result of the sale of said lots shall be divided on the basis of 25% to be paid to " Kopple and the remaining seventy-five per cent to the appellant. Although Louis Weinstein is not named as a party to the agreement, it appears by the record that he signed the same. This agreement was recorded on April 26, 1926, and appeared on the title company's report of the title made for the purpose of plaintiff's mortgages, and given to the plaintiff's attorney. In accordance with this agreement, a deed was executed by the appellant and delivered to Kopple, dated October 6, 1925, and this was also recorded. On

November 18, 1926, Kopple executed a deed to the defendant Duane Corporation, which he controlled, and on the same day executed and delivered to the plaintiff the bonds and mortgages in suit. These bonds and mortgages were given by Kopple's corporation as collateral security for a promissory note for the aggregate amount of both mortgages. This note was in the usual form used in banking practice. It was renewed on June 18, 1928, by a note for $56,000. At the time that the original note and the bonds and mortgages were made, $67,500 was credited to the corporation's account in the bank and the corporation gave to the bank its certified check for $11,500, which was held as additional security for the loan. This check was subsequently retained by the bank and applied on the loan at the time the final renewal note was made, so that the Duane Corporation actually received only $56,000, less about $3,700 for attorney's fees, service charges and disbursements. Interest was paid upon the note up to June 18, 1928. Thereafter notice was served by the bank by registered mail on Kopple and the Duane Corporation that the bank would not further renew the note and demanded payment, and that in default the bank would offer the bonds and mortgages for sale at public auction on August 15, 1928, at twelve o'clock noon. They were so put up for sale and were purchased by the plaintiff bank for $32,500, which was credited on account of the loan. The summons in this action is dated August 17, 1928, and was served on August 22, 1928. It may be noted that throughout the testimony of plaintiff's credit manager, Frost, and that of its president, Rothschild, it was insisted that the payments made for interest were on the note and not upon the bonds and mortgages. Rothschild testified that he had seen Kopple before this loan was made; that he had borrowed from the bank before, that is, the Duane Corporation had; but he did not know whether Kopple had or not; that he had known Kopple for quite a while before this particular transaction and that he and the Duane Corporation had an active and satisfactory account with the bank. Frost testified that he had never heard of either Metta Weinstein or Louis Weinstein on August 15, 1928, or at any time prior thereto. Rothschild also testified that he did not know Louis Weinstein and did not remember having seen him.

Kopple testified that before the notes were delivered to the bank he had a conversation with Louis Weinstein, who is a son of the appellant, and that, in fact, the transactions in this matter were had with the son, and not with the mother. He then testified concerning the making of the agreement between himself and the appellant, and said that they tried to sell some of the lots and a few

of them were sold at auction in Long Beach and the balance they could not sell; that he then told Louis Weinstein that he could not carry the lots any more because there was over $100,000 involved in it, and Weinstein told Kopple to go out and try to raise some mortgages on the property to pay the loan to the Duane Corporation, which he did. He then testified to efforts made to obtain a loan and finally suggested to Weinstein that he, Kopple, go to his bank and try with his collateral note, his personal indorsement given as collateral to these mortgages, to get a loan, and that the bank loaned the money.

Louis Weinstein denied the conversation with him testified to by Kopple, denied that the bonds and mortgages in suit were ever discussed by Kopple with him, and also denied that Kopple did, prior to that time, tell him that he contemplated or proposed to get these bonds and mortgages, and testified that he did not at any time consent to them. On cross-examination he testified to another transaction in which a loan was obtained from the Capitol National Bank involving other notes, which were thereafter taken up by his sale of the lots. It nowhere appears when this transaction took place, except that it was after the agreement with Kopple had been signed and prior to the giving of the mortgages in suit.

The learned Special Term made a decision in plaintiff's favor directing judgment of foreclosure and sale. In that decision it was found that the total principal sum due on the two bonds and mortgages was $67,500, with interest from the date of their execution and delivery on November 18, 1926, amounting to $6,250, and that the total amount due on the two bonds and mortgages for principal and interest was $73,750. Judgment was thereupon entered, and the defendant Metta Weinstein has appealed.

It is contended by the appellant that the execution and delivery of these two mortgages was not authorized by the agreement between her and Kopple; that the plaintiff bank had both constructive notice from the record, and actual notice from the report of the title company to its attorneys, of this agreement, and that the mortgages are not, therefore, enforcible. The learned Special Term found in its decision, in substance, that the plaintiff had no knowledge or information as to the agreement in question. It is true that both Frost and Rothschild testified that they had no knowledge of the agreement at the time the bonds and mortgages were executed and the loan made, but it was conceded that this agreement appeared on the title company's report submitted by that company to plaintiff's attorney before the bonds and mortgages were made. In my opinion, this constitutes actual notice even if the record of the agreement did not constitute constructive notice to the bank.

This agreement was in the nature of a trust agreement under which the property was conveyed to Kopple for the purposes named in the agreement. (*McArthur* v. *Gordon*, 51 Hun, 511; *Todd* v. *Eighmie*, 10 App. Div. 142.) The deed of appellant to Kopple was made under the agreement and it is nowhere pretended that he paid any consideration for it. In my opinion, therefore, this agreement was within the Recording Act and its record was constructive notice to subsequent purchasers or incumbrancers. (See Real Prop. Law, §§ 290, 291.) But it is contended by the respondent that the testimony of the plaintiff's officers, who handled the transaction in behalf of the bank, that they never knew or heard of the appellant or of any alleged interest in the property covered by the mortgages, and the testimony of Kopple that appellant's name or interest was never mentioned in the transaction, is clear proof that the bank had no knowledge of the existence of appellant or of the agreement in question. Respondent's counsel cites no authority to support this proposition and it is plainly unsound. He also asserts that the record of this agreement was insufficient to constitute constructive notice because the agreement did not constitute an incumbrance, citing *Washburn* v. *Burnham* (63 N. Y. 132), in which it was held that an executory contract for the sale of land did not constitute a cloud on the title and was not an incumbrance or a lien upon the land, and also that such a contract is not within the provisions of the Recording Act. As I have already pointed out, this agreement was in the nature of a trust agreement and affected the title of the land, and its recording was, therefore, within the Recording Act. The case last cited has, therefore, no application to the agreement in question.

Respondent also urges that, because the agreement itself provided that the appellant should execute and deliver to Kopple " a full warranty deed free of all encumbrances," and as such a deed was executed pursuant to the agreement by the appellant to Kopple and *by Kopple to the Duane Corporation*, which thereupon executed and delivered these mortgages as security for the loan, therefore, the agreement itself contemplated and expressly authorized the transaction in suit. I am unable to follow this reasoning. The agreement did contemplate a full covenant warranty deed free from incumbrances by appellant to Kopple. A deed in that form was essential to the carrying out of the agreement, that is, the sale of the lots. The agreement certainly did not contemplate a deed by Kopple to the Duane Corporation, because this was not a sale of the lots under the agreement. It was simply a transfer by Kopple to his creature, the Duane Corporation, in order to facilitate the loan obtained from plaintiff, and to avoid any question of usury.

It is not pretended that the Duane Corporation paid Kopple or the appellant any thing for the conveyance to it, and the evidence in the record shows the contrary.

It is further contended by the respondent that the evidence established that the appellant, acting through her duly authorized representative, knew of, approved and authorized the transaction requested between Kopple, the Duane Corporation and plaintiff. This contention seems to be based upon the testimony of Kopple to the effect that all his transactions concerning the appellant's property, at the time the agreement with her was made, were with Louis Weinstein, her son, and that when Kopple found himself in a position where he was unable to carry the property he conferred with Louis Weinstein, and they attempted to negotiate a private loan but without success, and that thereafter Weinstein authorized Kopple to negotiate the loan with the plaintiff and give the mortgages as security therefor. Weinstein, however, denied any such conversation. He did admit, however, that the Duane Corporation borrowed $36,000 from the Capitol National Bank and delivered mortgages covering other property owned by the appellant and the loan was paid at maturity by arranging for a sale of the lots covered by the mortgage. This testimony is pointed to by the respondent as showing that Louis Weinstein, the representative of the appellant, approved a similar transaction to that in suit, and, by reason thereof, knew and approved plaintiff's loan to Kopple and the Duane Corporation and the mortgages given as security therefor. The only difficulty with this argument is that its very basis is wanting. There is no proof in the record that Louis Weinstein acted as appellant's representative in the matter of these loans either by plaintiff or the Capitol National Bank, or that she had any knowledge thereof. The mere fact that the negotiations between Kopple and appellant, when the agreement in question was made, were conducted by Louis Weinstein, is no evidence that he represented her, or had any authority to represent her, in the matter of the bank loans. Agency cannot be spelled out by any such vague testimony.

There is not present in this case any superior equity in the plaintiff. It is not pretended that any part of this loan was expended on the property in question or for its benefit, and, indeed, it is conceded that no part of the loan was so expended. Kopple testified in substance that, long before these mortgages in suit were made, he purchased pursuant to the agreement with appellant the two mortgages referred to therein and that the mortgages to the plaintiff bank were not obtained to pay the mortgages mentioned in the agreement.

Appellant also contends in substance that the judgment appealed from imposes a double liability for interest and a portion of principal. Interest was paid on the loan up to June 18, 1928, and plaintiff applied upon the note the certified check of the Duane Corporation for $11,500, held as additional security; but the judgment is for the full amount of principal and interest from the dates of the mortgages. Respondent, however, insists that no interest was paid upon the *bonds and mortgages*, but only upon the *collateral note*. But there was only one loan, and this loan was secured by the bonds and mortgages as well as the collateral note. There is nothing in the notes, in the bonds and mortgages themselves, nor is there any agreement between the parties disclosed by the record, by which the Duane Corporation and Kopple were obligated to pay plaintiff double interest for this loan, that is, interest on the bonds and mortgages and also upon the note. But if respondent's contention is sound, this is the effect of the judgment appealed from. According to respondent's reasoning, the Duane Corporation was in default, and these bonds and mortgages could have been foreclosed at any time after the first installment of interest became due, even though interest had been paid on the loan, which was the only consideration for the bonds and mortgages, and although the principal of the note might have been reduced to a mere nominal sum. Furthermore, Kopple and his corporation are liable to pay the deficiency resulting from the sale of these bonds and mortgages, amounting to $35,000. Respondent treats them as though they were an independent transaction from that of the collateral note, whereas they are all parts of the same transaction, based on the same consideration. They are not like bonds and mortgages made by third parties to the Duane Corporation, which might be sold on default in the note and the purchaser acquire the right to enforce them to the extent of the amount unpaid to the corporation for principal and interest. Their sale by the bank to itself added nothing to the amount due it from the entire transaction. Even had they been purchased by a third person they could not have been enforced for any greater amount than that due the bank, because their assignment would be subject to all equities and defenses. They were taken in its own name by respondent, simply to secure the loan made under the collateral note. Upon the payment of the note, their purpose would have been fulfilled, and they would have to be satisfied. In like manner the mortgagor would be entitled to have their principal reduced to the extent of payments on the note, and would also be entitled to be credited upon the bonds for payments on the note either for principal or interest.

I am not at all impressed by the good faith of this suit. The last renewal note was made on June 18, 1928. Notice and demand of payment and of sale of the bonds and mortgages was given within two months thereafter and the sale was had on August 15, 1928. There is no explanation anywhere in the testimony why this action was taken or was necessary, except that Frost testified that upon the last renewal he told Kopple that plaintiff would not further renew the note. There was no proof that either Kopple or his corporation was insolvent, or that respondent's security for the loan was in danger. On the contrary, the testimony is that Kopple and the Duane Corporation had had an account with the bank for several years and that it was an " active and satisfactory account." Furthermore, it will be observed that both Kopple and his corporation have defaulted in this action, and interposed no defense to the foreclosure of the mortgages for their full amount and interest from their dates, although this imposes upon them a double liability. This is a rather singular course for them to pursue, and it is understandable only upon the theory that either Kopple is assured that the property will bring enough to prevent any deficiency against his corporation, or he and his corporation plan to secure the property for themselves for a price less than its fair value.

The judgment should, therefore, be reversed upon the law and the facts, with costs to the appellant, and judgment directed in the appellant's favor dismissing the complaint, with costs. Findings of fact and conclusions of law inconsistent with this decision are reversed and new findings and conclusions will be made in conformity herewith.

LAZANSKY, P. J., SEEGER, CARSWELL and SCUDDER, JJ., concur.

Judgment reversed upon the law and the facts, with costs to the appellant, and judgment directed in the appellant's favor dismissing the complaint, with costs. Findings of fact and conclusions of law inconsistent with this decision are reversed and new findings and conclusions will be made in conformity herewith.

Settle order on notice.