TODD v. EIGHMIE.

(Supreme Court, Appellate Division, First Department. November 13, 1896.)

1. VENDOR AND PURCHASER—PURCHASER IN GOOD FAITH.
   A person who buys a title to land, after notice filed of an action to perfect an adverse title thereto, but without actual knowledge of its pendency, is a purchaser in good faith as to another unrecorded title, of which he had no notice.

2. SAME—PURCHASE OF DEFECTIVE TITLE.
   There is no inference of a fraudulent intent, from the purchase of a title known to be defective.

Appeal from special term, New York county.

Action by Judson S. Todd against George D. Eighmie to disaffirm a contract for the sale of land. From an order granting plaintiff's motion for a new trial on the ground of newly-discovered evidence, after the verdict for defendant had been rendered by direction of the court, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

Reuben H. Underhill, for appellant.

D. B. Ogden, for respondent.

RUMSEY, J. The plaintiff and the defendant entered into a contract by which the plaintiff agreed to buy, and the defendant agreed to sell to him, four lots of land on 117th street, in the city of New York. The plaintiff paid $1,000 upon the contract, and incurred expenses in examining the title. As the result of that examination, he declined to proceed with the contract, and brought this action to recover back the money he had paid and the expenses to which he had been put, for the reason, as he said, that the defendant had not a title to the premises. Upon the trial the plaintiff was defeated. From the judgment entered against him he took his appeal to this court, and the judgment was affirmed. The case is reported in 4 App. Div. 9, and 38 N. Y. Supp. 304. After the affirmance, this motion was made for a new trial, upon the ground of newly-discovered evidence, and it was granted. From order granting a new trial, the defendant takes this appeal.

The land in question was owned before 1827 by one Ely Moore. The first transaction with regard to it which appears upon the record is a mortgage from one Furman to one Ely Moore, which was recorded in 1828, which recites a conveyance from Ely Moore to Furman. The deed thus recited was not recorded, and there was no evidence of its existence, except the recital in the mortgage. By a series of mesne conveyances, Furman's title to this land was conveyed to one Therasson, and from him the defendant's title is derived. Therasson took his title on the 1st day of January, 1853, and has been in possession since that time, so far as appears. The defect in his title, of course, was the failure to record the deed from Ely Moore to Furman, which was only proved by the recitals in the mortgage. The adverse title, of the existence of which the plaintiff complained, arose as follows: On the 1st of May, 1845,

Ely Moore gave a power of attorney to one Thomas to dispose of this land, with other lands, by virtue of which Thomas, as attorney for Moore, conveyed to one Norton, on the 1st of December 1848. Norton retained the title to the property until the 30th of April, 1868, when he conveyed it to one Hawkes. The power of attorney from Ely Moore, and the deed executed by authority of it, were recorded on the 2d day of May, 1868. The plaintiff claimed that, because there was an apparently perfect title in Hawkes by deeds properly recorded, the title thus vested was good as against the grantee of Furman, whose deed from Ely Moore had never been recorded. To obviate this objection, the defendant put in evidence a deed from the heirs of Ely Moore in one Motley, made in 1864, and recorded on the 4th of January, 1865, and another deed from Motley to Callaghan, recorded on the 27th of March, 1868, and also a deed from the heirs of Ely Moore to Callaghan, recorded on the 22d of April, 1868. It appeared that Callaghan, in May, 1868, conveyed to Therasson. This court held that the deeds from the heirs of Moore to Motley and Callaghan, having been recorded before these creating the Hawkes title, cured the apparent defect in Therasson's title, and that the defendant's title thereupon became perfect under the recording acts, so that he could convey to the plaintiff, and give a title pursuant to his contract, and affirmed the judgment.

Upon the motion for a new trial, it was made to appear that on the 28th day of October, 1864, Therasson began an action against the heirs of Ely Moore, setting out his title in full, alleging that the heirs claimed still to be the owners of the property, and had begun an action to partition it, and asking, as relief, that the heirs of Moore be restrained from proceeding with their action of partition, and that they be required to convey to him. In this action, the complaint and notice of lis pendens was properly filed, on the 28th of October, 1864. It was made to appear, also, that Callaghan was the attorney for some of the Moore heirs, and appeared in that action for them. The plaintiff claimed that this notice of the pendency of action operated as a notice to Motley and Callaghan of Therasson's claim adversely to the title of the Moore heirs, and he further claimed that, because they knew at the time they purchased from the Moore heirs that there was an outstanding title, they could not be bona fide purchasers, even as against another adverse title, of which they had no notice.

The question presented upon this appeal is whether that claim of the plaintiff is well founded. A motion for a new trial upon the ground of newly-discovered evidence is not to be granted unless the evidence is of such a nature as, giving it a fair and reasonable construction and effect, is likely to produce a result different from the former one. Whether it is likely or not to do so must depend upon the facts which have been made to appear by the affidavits, and the party moving for a new trial is not entitled upon such a motion to have any inference drawn in his favor of the existence of the facts which have not already been made to appear, unless they are such as are necessarily to be inferred from

the facts in evidence. The question raised is to be decided solely upon the facts as they have been made to appear by the plaintiff's moving papers. From those papers it is fair to infer that the plaintiff had no knowledge of the notice of the pendency of the action in the Therasson case until after the decision of the appeal in this suit; and he cannot be chargeable with any laches, either in discovering the evidence or in bringing on his motion. He has therefore succeeded in presenting for our decision the question whether, considering the facts which he alleges with regard to the notice of pendency, those facts would require a different result to be reached upon the next trial. That can only be the case if the law is that, to be a bona fide purchaser under the recording acts, one must buy without any intimation whatever of a defect in the grantor's title, however technical it may be, at the risk of losing his purchase not only because of the defect of which he has notice, but of any other defect that may exist, whether he knows anything of it or not. The statute provides that a deed, unless recorded, is void as against a subsequent purchaser in good faith, and the answer to the question turns upon the meaning of the words of the statute "in good faith." 1 Rev. St. p. 756, § 1.

The plaintiff claims that as Motley and Callaghan, when they bought the title of the Moore heirs, had notice by this lis pendens of Therasson's title, their action in buying was fraudulent as against Therasson, and therefore they cannot be holders in good faith as against Norton or anybody else. There are undoubtedly cases which hold that if the purchaser, before paying the consideration, has notice of an adverse claim to the property, he cannot be said to be a bona fide purchaser; but in all these cases the notice which destroyed the bona fides was notice of the claim which was set up as hostile, not as here, where it is conceded that the purchaser knew nothing of the adverse claim set up, but his title is attacked because he might have known that there was another valid claim against the title which he bought. If that fact takes away his good faith as against any one who may set up a claim to these premises, it is only because it raises an inference of bad faith; that is, that he bought a title which he knew to be bad, with the intention of taking some undue advantage of or defrauding a person who had the actual title to the property. The plaintiff here says that Motley and Callaghan must have known that the title of the Moore heirs was not good, and, because they bought in that title, it must be inferred that they intended to defraud somebody by purchasing a title which did not exist, and making it good by getting a prior record of the conveyances of it; and that, having such an intent to defraud, they cannot be permitted to hold that title as purchasers in good faith towards any one, even one of whose adverse title they knew nothing. If we admitted the conclusion from the premises, which we do not, the premises are not sound. There is no necessary or even fair inference of an intention to defraud or get the advantage of any one by the purchase of a title known to be defective. There may be other reasons for such purchase which would make it perfectly proper to buy the title. One

who purchases an estate with knowledge of a prior outstanding title by an unrecorded deed is said not to be a purchaser in good faith as, to that title, because to permit him to buy with actual knowledge of such a title would enable him to deprive the prior grantee of his right to this estate, and for that reason it is said that his purchase is fraudulent. But the term "fraud" here does not mean actual mala fides, a willful fraud, but only constructive fraud,—the conclusive inference which the law draws from the fact of such a purchase without regard to the actual intent of the purchaser. The buyer may have known of the deed, and have forgotten it, although, having the deed in his mind, he may not know that it was a deed of the same property or of the same estate, but that is a matter of no importance. The law charges him with the knowledge which he had, or with the inferences which he ought to have drawn, no matter how innocently he may have acted in making his purchase, because of his want of memory or of his unsound conclusion. If he once knew of the deed, or if the deed which he knew of conveyed the title of the premises which he bought, although he supposed that it did not, he is no longer a purchaser in good faith as to that deed. This is not put upon the ground of any evil intent, but it is simply an inference which the law draws from the undisputed facts. But, in the absence of evidence to charge the purchaser with an actual evil intent in making the purchase, it cannot be said that, because he knew of one adverse title, he thereby becomes a fraudulent purchaser as to another title of which he had no information or suspicion. In this case there is no suggestion of any actual bad faith on the part of anybody. In truth, all the facts disprove it.

With regard to Motley, there is no claim that he had any actual knowledge whatever of the Therasson title, or of the pendency of the action which Therasson brought. He was simply charged by the lis pendens with such notice as he is required to infer from its filing, although he was not actually aware of the existence of it. As to him, that notice, of course, had only such effect as the statute prescribes (Code Proc. § 132; 13 Am. & Eng. Enc. Law, 894); and that was to bind him by all proceedings taken in the action after the filing of the notice, to the same extent as if he was a party to the action. If he had actual notice of the pendency of the action, it may be that he would be charged with the knowledge of any information which he might have gotten by inquiry with regard to it; but, as he had no such notice, the only effect was that his rights, whatever they were, were bound by the judgment, whatever that was. Page v. Waring, 76 N. Y. 463, 474. There was no judgment in the case, and therefore the action had no final effect upon the rights of Motley. As there is no pretense that he had any actual knowledge of the filing of the pendency of the action, he certainly cannot be charged with any actual fraud in making his purchase, because, so far as appears, he had no actual notice of any adverse title whatever. If Motley's deed had been a perfect one, that would be the end of this case. But as Motley's deed was defective, because there was no seal, he only obtained the equi-

table interest of the Moore heirs, as was held by the prior decision; and it was necessary for Callaghan, in order to perfect his legal title, to get from the heirs of Moore a conveyance of the naked legal title, which apparently remained in them after the sale to Motley. This he did before the deed to Norton was recorded. When he obtained it, he knew of this adverse claim of Therasson's because he was the attorney for the defendants in the action brought by Therasson to enforce it. He was not therefore a bona fide purchaser so far as Therasson was concerned. But there is no evidence or pretense that he bought this property with the intention of defrauding Therasson, or getting any advantage over him, nor is there any suggestion of that kind in the plaintiff's moving papers. On the contrary, the almost necessary inference is that Callaghan was simply the actor in an effort to buy in this apparently outstanding title, for the purpose of protecting Therasson's apparently defective title, and for his benefit. Therefore no actual bad faith can be imputed to Callaghan, and there is no reason why it should be said that he was not a bona fide purchaser as to the other titles of which he knew nothing.

These considerations dispose of this motion, because the new evidence of the plaintiff, as disclosed in the moving papers, is not effectual to attack the good faith of Callaghan or Motley, and thereby deprive them and the defendant, as their grantees, of the benefit of the recording act. For these reasons, the motion should have been denied. The order appealed from is therefore reversed, with $10 costs and disbursements, and the motion for a new trial denied, with costs. All concur.

---

BROZEK v. STEINWAY RY. CO.

(Supreme Court, Appellate Division, Second Department. November 20, 1896.)

STREET CARS—INJURY TO PERSON CROSSING TRACK.

Negligence and contributory negligence are questions for the jury where a person, in the daytime, attempted to drive a vehicle across a track, 40 or 50 feet in front of an electric car which was approaching at the rate of 8 to 12 miles an hour, and was injured by the car.

Appeal from trial term, Kings county.