In re HARDWAY RESTAURANT, INC., d/b/a Once Upon a Stove, Debtor.

HARDWAY RESTAURANT, INC., Debtor in Possession, Plaintiff,

v.

ONCE UPON A STOVE, INC., Defendant.

N & K Realty Company, Additional Defendant on Counterclaim.

Bankruptcy No. 82 B11564.
Adv. No. 82–6022A.

United States Bankruptcy Court, S.D. New York.

June 23, 1983.

Glass & Howard, New York City, for debtor; Amos Alter, New York City, of counsel.

Chester B. Salomon, New York City, for Once Upon a Stove; Alex P. Ostrow, New York City, of counsel.

Santangelo, Santangelo & Cohen, New York City, for additional defendant; Laura Carraher, New York City, of counsel.

BURTON R. LIFLAND, Bankruptcy Judge.

## DECISION AND ORDER ON ALL PARTIES' MOTIONS AND CROSS-MOTIONS FOR SUMMARY JUDGMENT

I. *Background*

Debtor Hardway Restaurant, Inc., d/b/a Once Upon a Stove ("Hardway"), instituted the above-captioned adversary proceeding in this Chapter 11 case[1] pursuant to Bankruptcy Rule 11–61(a)(2)[2] to determine the validity of the unrecorded lien held by the defendant, Once Upon a Stove, Inc. ("Stove, Inc.") on Hardway's leaseholds. Hardway moves herein for summary judgment pursuant to Rule 56 as applied in bankruptcy matters by Bankruptcy Rule 756 on its complaint as well as dismissing the two counterclaims asserted against it by Stove, Inc. for relief from the automatic stay to enable Stove, Inc. to regain possession of the premises. In its counterclaim, Stove, Inc. impleaded the landlord, N & K Realty Company ("N & K") as a necessary party and to obtain complete relief on its counterclaim, wherein it seeks to be placed in sole and exclusive possession of the premises.[3]

By the submission of a joint Rule 3(g) Statement all parties have cross-moved against each other for summary judgment for the relief sought in their respective pleadings. In addition, all parties declare in this statement that there are no material issues of fact in dispute.

Hardway, a New York corporation, is in the sole business of operating and managing the Once Upon a Stove restaurant, bar, and grill ("the Restaurant"). Stove, Inc., a New York corporation, owned and operated the Restaurant prior to selling its leasehold interests in the Restaurant premises to Hardway.

N & K, a New York partnership, is the landlord of a three-fourths portion of the Restaurant premises.

A. *Pre-Petition Events*

The Restaurant premises consist of four contiguous leaseholds under written leases with Stove, Inc. as the tenant. N & K is the present landlord of three of the four leases whose terms extend into 1988. The landlord of the fourth lease, Walter 325 Third Avenue Company ("Walter"), is not a party to this action. This fourth lease's term extends into 1990. None of the leases to Stove, Inc. was recorded as authorized by Article 9 of the New York Real Property Law.

On March 25, 1981, Hardway and Stove, Inc. entered into a written agreement for the sale of the Restaurant by Stove, Inc. to

---

1. Title 1 of the Bankruptcy Reform Act of 1978, Pub.L. 95–598, 92 Stat. 2683, enacted and codified as Title 11 of the United States Code, the "Bankruptcy Code" and all section references cited herein may be found in 11 U.S.C., unless otherwise indicated. Chapter 11, § 1101 *et seq.*, provides for reorganization.

2. Title V of the Rules of Bankruptcy Procedure govern the procedure in courts of bankruptcy in cases under Chapter XI of the Bankruptcy Reform Act. The Rules were prescribed pursuant to 28 U.S.C. § 2075.

3. Stove, Inc., in its first counterclaim seeks relief from the automatic stay pursuant to Section 362 in order to continue its New York Supreme Court action seeking possession of the Restaurant premises. In addition, Stove, Inc. in its second counterclaim impleads N & K, seeking a declaration that Stove, Inc. is entitled to the exclusive possession of that portion of the premises leased by N & K. In response, N & K asserts that Stove, Inc.'s second counterclaim is barred by the principles of res judicata and collateral estoppel, since N & K has obtained a final judgment of possession against Stove, Inc. from a New York Civil Court.

Hardway. The transfer of the Restaurant was consummated on December 1, 1981 for a total purchase price of $570,000, of which $473,050.24 was payable in three series of promissory notes. These notes were due at regular intervals over a period of approximately seven years. Upon any default in payment, the notes provided for an acceleration of the unpaid balance.

The total purchase price of $570,000 was to be allocated as follows:

  a) Furniture, fixtures
     and equipment     $24,105
  b) Covenant not to
     compete     $181,965
  c) 4 leases     $363,930

In connection with the transfer, Hardway and Stove, Inc. executed four lease assignment and assumption agreements, one concerning each respective leasehold. With respect to each assignment and assumption agreement, each respective landlord executed a consent and certification. Neither the assignment and assumption agreements nor the consents and certifications were recorded as authorized by Article 9 of the New York Real Property Law. At the same time, Hardway reassigned the four leases to Stove, Inc. to secure payments of the balance on the notes. These four lease [re]assignments were also not recorded as authorized by Article 9 of the New York Real Property Law. As further security for the promissory notes, Hardway and Stove, Inc. executed and properly recorded Uniform Commercial Code financing statements giving Stove, Inc. a lien on all of the fixtures, chattels and equipment located at the business premises. Significantly, this personal property recordation is the only statutory public notice resorted to by the parties; this filing is sufficiently seductive to cause a hypothetical purchaser to believe that any protective real property recordings also would have been made.

Commencing in or around June 1982, Hardway ceased making payments on the promissory notes as they became due. No payments have been made by Hardway to Stove, Inc. on any of the notes subsequent to June 1982. In addition, Hardway ceased making rental payments to the landlord, N & K, as of June 1982. N & K received no payments of rent from the debtor thereafter until a stipulation was agreed upon by the parties and so ordered by this Court on October 20, 1982. Pursuant to this stipulation, Hardway's security deposit was to be applied to its arrears in rent and Hardway was to pay monthly use and occupancy to the landlord at the lease rate. The debtor made and the landlord accepted the use and occupancy payments through the date of the Joint 3(g) Statement.

On July 15, 1982, N & K commenced an action in the Civil Court of the City of New York, County of New York, against Hardway and Stove, Inc. seeking summarily to recover possession of the Restaurant premises covered by N & K's three leases. On July 29, 1982, Stove, Inc. notified Hardway of the defaults and that therefore the assignments of the leases for security were deemed operative. Thus, as called for under the terms of their agreements, Hardway was told to vacate the Restaurant premises by July 30, 1982. On July 30, 1982, Stove, Inc. served another notice of default on Hardway and demanded that Hardway leave the Restaurant premises by August 10, 1982.

On or about August 2, 1982, Stove, Inc. commenced an action by summons and notice of motion for summary judgment in lieu of complaint in the Supreme Court of the State of New York, County of New York, against Hardway seeking to recover a money judgment on the above-described notes in the amount of $430,000.[4] In addition, on or about August 10, 1982, Stove, Inc. commenced an action in the same court against Hardway seeking to recover possession of the Restaurant premises pursuant to

---

4. An escrow agent, appointed pursuant to an escrow agreement entered into by Hardway and Stove, Inc. at the time of the transfer of the Restaurant premises, was also a plaintiff in the action.

the reassignments of the leases and its collateral covered by the security agreements and financing statements. Hardway has nevertheless remained in possession of the Restaurant premises throughout this controversy.

On August 12, 1982 Hardway filed a petition in this Court for reorganization ("the Petition") under Chapter 11 of the Bankruptcy Code ("the Code"). Thereafter, Hardway initiated this adversary proceeding. At the present time, Hardway still owes Stove, Inc. approximately $430,000 as an unpaid balance from the sale of the Restaurant. Pursuant to Section 362 of the Code, Stove, Inc.'s actions against Hardway for money judgment and possession of the Restaurant premises were stayed, as was N & K's action against Hardway for possession of the Restaurant premises.[5]

B. *Roles of the Parties*

Hardway, the debtor in possession, may be seen to assume various roles in the course of this opinion. This Court will thus clarify Hardway's different guises at the outset.

Stove, Inc., grantor, assigned its leasehold interests in the Restaurant premises to Hardway. These assignments were not recorded. Vis-a-vis Stove, Inc., Hardway is a grantee. Hardway is also Stove, Inc.'s grantor because the leasehold interests were assigned back to Stove, Inc. as security for the promissory notes. Hardway is a tenant vis-a-vis N & K, which is the landlord for three-quarters of the Restaurant premises.

The main thrust of the Court's analysis herein is to determine whether Hardway may be deemed to assume the role of a hypothetical bona fide purchaser. Pursuant to the provisions of Section 544(a)(3), this Court will analyze whether a hypothetical purchaser from Hardway would be put on notice of Stove, Inc.'s assignment of the leaseholds. This notice would preclude such a purchaser from assuming the status of a bona fide purchaser. In turn, the debtor would be precluded from assuming the derivative status of a bona fide purchaser and would be unable to avoid the lien at issue. The factors that constitute sufficient notice to vitiate bona fide purchaser status are determined by each state's laws.

II. *Discussion of Legal Issues*

Hardway, as a debtor in possession, seeks to exercise the powers of a trustee pursuant to Section 1107(a)[6] and the powers of a bona fide purchaser under Section 544(a)(3) so as to avoid the assignments of its leases for security to Stove, Inc. Hardway contends that the assignments are voidable by a bona fide purchaser under New York law since the assignments were not recorded under New York's recording statute, N.Y. Real Property Law § 291. In opposition, Stove, Inc. contends that Hardway cannot assume the status of a bona fide purchaser under New York law and, thus, cannot avoid the assignments of leases to Stove, Inc. What constitutes notice in New York is pivotal herein.

As there are no material facts in dispute, the parties' claims, including the counterclaims, hinge on the purely legal question of whether the debtor can assume the status of a bona fide purchaser pursuant to Section 544(a)(3).[7] For the reasons detailed

---

5. N & K proceeded in the Civil Court of the City of New York against Stove, Inc. for possession and on October 18, 1982 N & K obtained a final judgment of possession against Stove, Inc. Stove, Inc. appealed from this judgment and on October 29, 1982 was granted an order by the Appellate Term staying enforcement of the final order of possession pending appeal, subject to Stove, Inc.'s compliance with certain conditions. Stove, Inc., however, did not comply with the conditions of the Civil Court stay pending appeal and on November 23, 1982, N & K moved for and was granted an order vacating the conditional stay. Thereaft-

er, a warrant of eviction against Stove, Inc. was issued by the Civil Court to a City Marshall. However, the warrant has neither been executed nor returned unexecuted. The debtor has made no transfers of property of any kind to Stove, Inc. since the filing of the Petition.

6. 11 U.S.C. § 1107(a) provides in part: "[A] debtor in possession shall have all the rights ... and powers ... of a trustee...."

7. As to Stove, Inc.'s first counterclaim to lift the automatic stay so as to regain possession of the fixtures and premises and as to its second

hereinafter, it is the decision of this Court that because under the doctrine of bona fide purchaser Hardway must be permitted to assume the status and rights of such a hypothetical purchaser, Stove, Inc.'s lien on the Restaurant premises may properly be avoided and Hardway may remain in possession of the premises. This is because this Court's examination of whether or not a hypothetical purchaser from the debtor would be put on notice of the debtor's assignment to Stove, Inc. reveals that no such notice would result.

### A. Powers of a Debtor in Possession

■ Upon filing for relief under Chapter 11, Hardway became a debtor in possession [8] and as a debtor in possession, Hardway has all the rights and powers of a trustee pursuant to Section 1107(a). *See* 5 *Collier on Bankruptcy* § 1107.02 (15th ed. 1982). One such power is the ability to avoid any transfer of property by Hardway that would be voidable by a bona fide purchaser of real property pursuant to Section 544(a)(3) of the Code. *See, e.g., In re Washburn & Roberts, Inc.,* 17 B.R. 305, 307–08 (Bkrtcy.E.D.Wash.1982). *See also* 5 *Collier on Bankruptcy* § 1107.02 at 1107–5.

Section 544(a)(3) provides:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(3) a bona fide purchaser of real property from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser at the time of the commencement of the case, whether or not such a purchaser exists.

■ This avoiding power was not contained in the predecessor Bankruptcy Act of 1898. *See* 124 Cong.Rec. H11,097 (daily ed. Sept. 28, 1978); S 17,413 (daily ed. Oct. 6, 1978). Examination of the scant legislative history of Section 544(a)(3), *see McCannon v. Marston,* 679 F.2d 13, 16 (3d Cir.1982), reveals only the drafters' statement that the status of bona fide purchaser is new. *See* S.Rep. No. 989, 95th Cong., 2d Sess. 85 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. Nevertheless, courts and commentators have concluded that the rights of a bona fide purchaser pursuant to Section 544(a)(3) are to be determined under applicable state law. *See, e.g., McCannon v. Marston, supra, In re Lewis,* 19 B.R. 548, 550 (Bkrtcy.D.Idaho 1982); 4 *Collier on Bankruptcy* § 544.02 at 544–7 to 544–9 (15th ed. 1982).

■ The legal doctrine regarding bona fide purchaser is generally set forth in each state's recording statutes. A bona fide purchaser is required to have purchased in good faith *without notice* and for valuable consideration. *See Some Considerations to be Observed in the Recording of Leases,* Report of Special Committee on Leases, Real Property Division A.B.A., 12 Real Property, Probate and Trust Journal 256 at 259 *et seq.* (1977). The only requirement that presents a possible bar to Hardway's status as a bona fide purchaser pursuant to Section 544(a)(3) is the "without notice" requirement.[9] In most states, "without no-

---

counterclaim impleading N & K for exclusive possession of the premises, Stove, Inc. has conceded that these counterclaims are totally dependent on Stove, Inc.'s assignments of leases not being avoided by Hardway. Thus, the resolution of these claims turns on the issue of whether Hardway can assume the status of a bona fide purchaser. Moreover, Stove, Inc.'s first counterclaim for foreclosure on its lien on the fixtures is clearly unsupportable as a matter of law. This is because all parties have stipulated in their Joint 3(g) Statement that this property is necessary to the reorganization of the debtor. Thus, pursuant to Section 362(d)(2) no relief from the automatic stay may be obtained.

**8.** Section 1101 defines a debtor in possession as a debtor except when a trustee pursuant to § 322 has been appointed. No trustee has been appointed in this Chapter 11 case.

**9.** This Court has considered the argument raised by Stove, Inc. that Hardway may not avoid Stove, Inc.'s lien because its own interest is not of record and finds it unconvincing. In support of its argument, Stove, Inc. cites cases where possession or other notice by the party

tice" is broadly construed to include more than mere record notice. *See Some Considerations to be Observed in the Recording of Leases, supra,* at 267. Thus, even without recording, a person may be able to give sufficient notice of his interest to bar a hypothetical subsequent purchaser of the same real property from becoming a bona fide purchaser. *See id.*

In construing Section 544(a)(3), a court must decide if state law should be applied simply to ascertain if the interest sought to be avoided was required to be recorded or whether inquiry as to the total circumstances beyond recordation activity is mandated. The broader focus is designed to determine if under state law there may have arisen some other kind of notice which would bar the trustee from assuming the status of a bona fide purchaser.

The issue of the scope of a court's inquiry was recently addressed by the Third Circuit in *McCannon v. Marston,* 679 F.2d 13 (3d Cir.1982). In *McCannon,* the court held that although the specific legislative intent in the enactment of Section 544(a)(3) is not clear, an examination of this section and Section 365 reveals that state law "without notice" requirements should be fully applied. Therefore, the Third Circuit, after examining the facts, concluded that the plaintiff's interests could not be avoided. The court determined that although the plaintiff's interest in the debtor's property was unrecorded, there was sufficient notice arising from plaintiff's open and continuous possession of the debtor's property to bar the trustee from asserting the status of a bona fide purchaser. Under Pennsylvania law, such possession constitutes constructive notice of the plaintiff's interest in that property. *Id.* at 16. The court reasoned that since there could be no bona fide purchaser under state law, the trustee's status as a bona fide purchaser pursuant to Section 544(a)(3) was also barred.

A more narrow reading of the requisite inquiry by a bona fide purchaser limited solely to that which is recorded is reflected in *In re Belize Airways,* 12 B.R. 387 (Bkrtcy.S.D.Fla.1981). In *Belize,* the court avoided an unrecorded agreement of sublease because under · Florida's recording statute, such an unrecorded interest can be avoided by a bona fide purchaser. The court, however, failed further to inquire as to whether any other kind of notice under Florida law would bar the trustee's assumption of the status of a hypothetical bona fide purchaser. Such an inquiry would have revealed that the defendant's possession of the subleased property would constitute sufficient notice under Florida law to preclude the plaintiff from attaining bona fide purchaser status. Florida Annotated Statutes Sec. 695.01. *See In re Ignasiak,* 22 B.R. 828, 830 (Bkrtcy.E.D.Mich.1982); *Houston v. Mentelos,* 318 So.2d 427, 430–431 (Fla.App.1975); *Humble Oil & Refining Company v. Laws,* 272 So.2d 841, 842 (Fla. App.1973); *Florida Land Holding Corp. v. McMillen,* 135 Fla. 431, 186 So. 188, 191 (1939). *See also* Norton, Bankruptcy Law and Practice § 30.05 (1981), where Professor Norton appears to limit the inquiry to record notice, *cited in In re Minton Group, Inc.,* 28 B.R. 774 at 787–788 (Bkrtcy.S.D.N. Y.1983).

However, the better-reasoned approach, taken by the majority of courts, applies the full "without notice" requirement advanced by *McCannon. See, e.g., In re Richardson,* 23 B.R. 434 (Bkrtcy.D.Utah 1982); *In re Elin,* 20 B.R. 1012 (D.C.D.N.J.1982); *aff'd, Appeal of Busche,* 703 F.2d 549 (3d Cir.1983) and *aff'd by Elin v. Busche,* 703 F.2d 550 (3d Cir.1983); *In re Lewis,* 19 B.R. 548 (Bkrtcy.D.Idaho 1982). In these cases, the courts, applying state law, held that there was notice other than record notice of the property's ownership which barred the trustee's bona fide purchaser pursuant to Section 544(a)(3). In *Elin,* notice sufficient to

---

with an unrecorded interest has vitiated a subsequent purchaser's bona fide purchaser status. As described herein, there has been no actual or constructive notice of Stove, Inc.'s interest given here by, for example, a possession by it

of the premises. Moreover, in *In re Belize Airways, infra,* at 387, a recordable but unrecorded sublease was successfully avoided by a debtor-sublessor even though the opinion does not indicate that the main lease was recorded.

defeat the trustee's bona fide purchaser avoiding powers under New Jersey law arose from the recording of a clearly defective deed which imposed upon a prospective purchaser a duty of further inquiry. In *Lewis,* notice arose from the defendants' possession of the real property. In *Richardson,* notice emanated from the recorded notice available to defendants of the default of the debtor's mortgage on the real property in issue.

This Court will proceed to examine the facts pursuant to the broader focus used by the Third Circuit in *McCannon* of what constitutes sufficient notice to vitiate the trustee's hypothetical bona fide purchaser status. Because it is my conclusion that any hypothetical purchaser from the debtor would not reasonably be put on any kind of notice of the debtor's lease assignment to Stove, Inc., I conclude that this debtor may assume the rights of a hypothetical subsequent bona fide purchaser and thus may avoid Stove, Inc.'s lien.

New York's recording statute, Real Property Law Section 291, provides in pertinent part:

> "A conveyance of real property, within the state . . . may be recorded. . . . Every such conveyance not so recorded is void as against any person who subsequently purchases . . . the same real property or any portion thereof . . . in good faith and for a valuable consideration, from the same vendor or assignor . . . and whose conveyance, contract or assignment is first duly recorded. . . .'"

■ Assignments of leases for security constitute conveyances under the New York Real Property Law and thus may be recorded. *People ex rel. Henry Elias Brewing Co. v. Gass,* 120 A.D. 147, 104 N.Y.S. 885, 886 (1st Dept.1907), *aff'd,* 190 N.Y. 565, 83 N.E. 1129 (1908). *See also* N.Y. Real Property Law Section 291(c). Therefore, were this Court to apply a strict record notice approach, our inquiry would end here because under New York law, Stove, Inc.'s unrecorded assignments of leases for security would be void as against the hypothetical bona fide purchaser.

Since this Court adopts the Third Circuit's interpretation, a trustee must be without notice of any kind under applicable state law to avoid an interest in real property pursuant to Section 544(a)(3). Although New York Real Property Law Section 291 does not specifically state that a purchaser must be without notice to void an unrecorded interest, such a requirement has been read into the "good faith" requirement which Section 291 contains. *See, e.g., Todd v. Eighmie,* 10 A.D. 142, 41 N.Y.S. 1013 (1st Dept.1896), *cited in Baccari v. DeSanti,* 70 A.D.2d 198, 431 N.Y.S.2d 829, 831 (2d Dep't 1979).

■ Even if New York's statute can be read to contain the "without notice" requirement, this Court still finds that Hardway can accede to rights of a hypothetical bona fide purchaser from the debtor and avoid Stove, Inc.'s assignments of leases for security. An examination of New York law reveals that notice sufficient to bar a purchaser from avoiding an unrecorded interest as a bona fide purchaser may arise by: (a) actual knowledge, *see Herubin v. Malackowski,* 113 Misc. 100, 184 N.Y.S. 829 (Oneida County Court 1920), (b) constructive notice of what may be revealed by an examination of the records, *see Andy Associates v. Bankers Trust Co.,* 49 N.Y.2d 13, 424 N.Y.S.2d 139, 399 N.E.2d 1160 (1979); and (c) possession by a third party, *see Wardell v. Older,* 70 A.D.2d 1008, 418 N.Y. S.2d 196 (3rd Dept.1979).

■ In the instant case, actual knowledge cannot bar Hardway's status as a bona fide purchaser because Section 544(a) clearly provides: "without regard to any knowledge of the trustee." *See also McCannon,* 679 F.2d at 16. Notice arising from possession by a third party also does not apply to our fact pattern because the debtor has at all times during this controversy been in possession of the affected premises. Although in New York it is well-settled that open and visible possession of real property by a third person places a purchaser on constructive notice of the possible existence of prior rights, *see Phelan v. Brady,* 119

N.Y. 587, 23 N.E. 1109 (1890); *487 Elmwood, Inc. v. Hassett,* 83 A.D.2d 409, 445 N.Y.S.2d 336 (4th Dep't 1981); *Pallone v. New York Telephone Co.,* 34 A.D.2d 1091, 312 N.Y.S.2d 660 (4th Dept.1970), *aff'd,* 30 N.Y.2d 865, 333 N.Y.S.2d 300, 286 N.E.2d 735 (1972); *Sanzone v. Niagara Mohawk Power Corp.,* 47 Misc.2d 237, 262 N.Y.S.2d 138 (Sup.Ct. Oneida Cty. 1965), *aff'd,* 27 A.D.2d 646, 277 N.Y.S.2d 125 (4th Dep't 1967), the term "third person" signifies a party other than the purchaser's grantor. *See, e.g., City Bank of Bayonne v. Hocke,* 168 A.D. 83, 153 N.Y.S. 731 (1st Dep't 1915). Here it is not Stove, Inc. or any other third person, but rather the debtor that is in possession of the premises under a color of title. Thus, such possession would give no notice of Stove, Inc.'s interest in the premises.

Under New York law, a prospective bona fide purchaser may be charged with constructive notice of all matters which are in the record. *See, e.g., Doyle v. Lazarro,* 33 A.D.2d 142, 306 N.Y.S.2d 268 (2nd Dep't 1970), *aff'd,* 33 N.Y.2d 981, 353 N.Y.S.2d 740, 309 N.E.2d 138 (1974). After examining the records, a purchaser is required to inquire as to any defect in his grantor's title that may have been revealed. *See Andy Associates, Inc. v. Bankers Trust Co.,* 424 N.Y.S.2d at 145, 399 N.E.2d at 1165. If no inquiry is made, the purchaser is charged with what a reasonable inquiry concerning the defect would have revealed. *See, e.g., Williamson v. Brown,* 15 N.Y. 354, 362 (1857).

In this action, a prospective bona fide purchaser from Hardway upon examination of the record would discover: 1) that Hardway's leases were not of record and 2) that N & K and Walter, the landlords, held record title to the Restaurant premises. Thus, further inquiry would be needed to ascertain the nature and genuineness of Hardway's lease interest.

Such further inquiry by a prospective bona fide purchaser would reveal that the Restaurant premises were originally leased to Stove, Inc. by N & K and Walter and that these leases were assigned by Stove, Inc. to Hardway. This information is easily verified by providing the bona fide purchaser with copies of the unrecorded leases to Stove, Inc. by N & K and Walter and the subsequent assignments by Stove, Inc. to Hardway. Although those instruments were not recorded as authorized by N.Y. Real Property Law Sections 290 and 291, they are valid. *See Lee v. Beagell,* 174 Misc. 6, 19 N.Y.S.2d 613 (Sup.Ct.Spec.Term, Broome County, 1940). A prospective purchaser from Hardway who inquired would be satisfied that although Hardway's leaseholds were not recorded, they are genuine. Since neither the leases nor the assignments make any reference to the assignments of leases to Stove, Inc. for security, a prospective bona fide purchaser would not be given notice of Stove, Inc.'s lien interest.

However, in examining the instruments, a prospective bona fide purchaser would become aware that the leases to Stove, Inc. provide that any subsequent assignments would require the prior consent of the landlords, N & K and Walter. Thus, a reasonable inquiry should entail a further verification that the landlords' consent had been obtained.[10]

This Court is charged with ascertaining whether reasonable inquiry by a prospective bona fide purchaser as to the landlords' consents would have revealed Stove, Inc.'s unrecorded interest in the Restaurant premises. Although a purchaser is charged with what a reasonable inquiry would reveal, for purposes of this discussion, the adverse proposition is more appropriate, *i.e.,* a purchaser is not charged with what a reasonable inquiry would not disclose. If Stove, Inc.'s unrecorded interest would not have been disclosed by reasonable inquiry, then Hardway can assert the rights of a bona fide purchaser and avoid Stove, Inc.'s

---

**10.** This inquiry as to the landlords' consents should be required even though under New York law a landlord can waive his consent to an assignment by accepting rent from the as-

signee. *See Olivero v. Duran,* 70 Misc.2d 882, 334 N.Y.S.2d 930 (1972); *see Woollard v. Schaffer Stores, Inc.,* 272 N.Y. 304, 312, 5 N.E.2d 829, 832 (1936).

assignments of leases pursuant to Code Section 544(a)(3).

Stove, Inc. contends that Hardway could only satisfy such an inquiry by providing a prospective bona fide purchaser with the original written consents executed by the landlords when Stove, Inc. assigned the leases to Hardway. Since these consents make reference to Hardway's assignments of the leases to Stove, Inc. for security, the prospective bona fide purchaser would have notice of Stove, Inc.'s unrecorded interest in the Restaurant premises. Therefore, Stove, Inc. contends that Hardway is not a bona fide purchaser and cannot avoid Stove, Inc.'s interest.

Hardway, on the other hand, contends that this inquiry can be satisfied merely by obtaining comfort letters from the landlords stating that they had consented to Stove, Inc.'s lease assignments to Hardway in which case no disclosure of Stove, Inc.'s interest would necessarily result.

However, neither party has presented any support for its argument. After extensive research, the Court has been unable to uncover a single New York case which directly addresses this issue. One case, *Van Dyck Foods, Inc. v. Dime Savings Bank of Brooklyn,* 253 A.D. 347, 2 N.Y.S.2d 307 (1st Dep't 1938) does render some assistance. In *Van Dyck,* the plaintiff had subleased his leaseholds to Wil-Lip Lunch, Inc. ("Wil-Lip"). Pursuant to the sublease the plaintiff obtained a chattel mortgage on the subleased premises. However, the sublease and chattel mortgages were not recorded. Subsequently, the defendant received an assignment of rents from the owner of the property leased to the plaintiff. Thereafter, the defendant evicted Wil-Lip. Plaintiff brought suit seeking damages for the eviction of his subleasee from the subleased premises containing the fixtures on which the plaintiff held the chattel mortgage. Defendant contended that as a bona fide purchaser, the unrecorded sublease and chattel mortgage were void. The defendant claimed that it was a bona fide purchaser although Wil-Lip's lease interest was unrecorded, since the defendant had made a reasonable inquiry which failed to reveal the plaintiff's interest. In addition, the defendant asserted that the inquiry established that plaintiff had assigned his lease instead of having subleased the premises. The court held that defendant's inquiry had been sufficient, based on the following facts: (a) Wil-Lip was paying the rent directly to defendant as assignee of the rents, (b) the president of Wil-Lip had informed the defendant that the plaintiff was no longer on the premises; and most importantly, (c) the defendant had received a letter from the owner which referred to the lease to the plaintiff as "assigned to Wil-Lip Lunch, Inc." *Id.* at 308. Although the court in *Van Dyck* did not mention whether there had been a written consent by the owner to the sublease to Wil-Lip Lunch, Inc., it is clear that the owner's letter was sufficient to satisfy the defendant's inquiry as to Wil-Lip's possession. The defendant thus was protected against any unrecorded interest which his inquiry did not reveal, specifically the plaintiff's interest. *Id.* (citing *Williamson, supra; Cook v. Travis,* 20 N.Y. 400 (1859); *Reed v. Gannon,* 50 N.Y. 345 (1872)).

This court, therefore, holds that the required inquiry by a hypothetical bona fide purchaser as to the landlords' consents could have been satisfied under New York law merely by obtaining comfort letters from the landlords stating that they had consented to Stove, Inc.'s assignments of the leases to Hardway. Since this inquiry would not disclose Stove, Inc.'s unrecorded interest in the leaseholds, this Court finds no barrier under New York law to Hardway's status as a bona fide purchaser. Hence, under New York law, Hardway as a bona fide purchaser pursuant to Section 544(a)(3) may avoid Stove, Inc.'s unrecorded assignments of leases for security.

This Court need not address the issues raised by Stove, Inc.'s first counterclaim to lift the automatic stay to regain possession of its chattels and premises and second counterclaim impleading N & K so as to obtain exclusive possession of the premises,

since the counterclaims depend on the assignments of lease not being avoided.[11]

### III. *Conclusion*

Based upon the foregoing, this Court holds that Stove, Inc.'s assignments of leases for security can be avoided by Hardway pursuant to Section 544(a)(3) of the Code. Accordingly, Hardway's motion for summary judgment on its claim against Stove, Inc. is granted. Stove, Inc.'s first counterclaim for relief from the Section 362 automatic stay and its second counterclaim against N & K are dismissed.