**In the Matter of CLARKSTOWN TRANSMISSIONS CORP., Debtor.**

**Bankruptcy No. 84 B 20457.**

United States District Court, S.D. New York.

Jan. 11, 1985.

Nicholas J. Damadeo, Williston Park, N.Y., for Gibraltar Transmission Corp.

Aaron R. Sobel, Spring Valley, N.Y., for Clarkstown Transmissions Corp.

## DECISION ON MOTION TO VACATE AUTOMATIC STAY

HOWARD SCHWARTZBERG, Bankruptcy Judge.

Gibraltar Transmission Corp. ("Gibraltar") has moved pursuant to Bankruptcy Rules 4001 and 9014 and under 11 U.S.C. § 362(d) for an order modifying the automatic stay under 11 U.S.C. § 362(a) so as to permit Gibraltar to execute its state court judgment which declared that Gibraltar was entitled to possession of certain premises now occupied by the debtor, Clarkstown Transmissions Corp., whose operations under the franchise agreement with

Gibraltar were also enjoined by the state court judgment that was entered before the debtor commenced its chapter 11 case in this court.

## FACTS

1. On December 5, 1978, the debtor corporation entered into a twenty year lease with the owner of the premises located on Route 304, Bardonia, New York. The debtor listed its place of business in care of Gibraltar Transmission Corp., No. 127 Dupont Street, Plainview, New York. This address is Gibraltar's regular business address.

2. On June 12, 1979, Gibraltar and the debtor entered into a written franchise agreement whereby the debtor was authorized to engage in the business of automotive transmission repairs under the trade name "Gibraltar Transmissions." As part of this franchise, the debtor was required to assign its lease to Gibraltar as security for the debtor's performance as a Gibraltar franchisee. The debtor executed a written assignment of its lease to Gibraltar on June 12, 1979.

3. The right to occupy the leased premises on Route 304, Bardonia, New York, was an integral part of, and incorporated in, the terms and conditions under the Gibraltar franchise agreement and was coextensive with the duration of the franchise agreement. This feature is evidenced by the following paragraphs in the June 12, 1979 franchise agreement:

54. Operator hereby recognizes and acknowledges that the site of Operator's shop was located and selected with the aid of GIBRALTAR, who also assisted in negotiating the lease terms for the site premises, all at a great expenditure of time and effort on the part of GIBRALTAR, Consequently, the location of said shop site and the leasing thereof by Operator are deemed to be a material part of the consideration for this Agreement contributed by Gibraltar.

\* \* \* \* \* \*

63. Simultaneously with Operator's signing of such lease for the shop premises, Operator shall execute an assignment of such lease from Operator to GIBRALTAR with a provision that said assignment shall only take effect, at GIBRALTAR'S option, upon the termination of this agreement under the terms thereof. Said assignment of lease shall also contain an assignment of all rights, title and interest in and to the telephone number or numbers, if there be more than one, assigned to, designated for or for which there is a directory listing for the Operator's shop. Operator agrees that upon termination of this franchise agreement, he will execute whatever documents and provide such written consent as may be required, in addition to those herein mentioned, to effectuate the said assignments of the said lease and telephone numbers.

64. (a) It shall be Operator's sole obligation to provide GIBRALTAR with a copy of the lease for the shop premises, together with the assignment thereof and the shop telephone number(s) as required herein.

(b) In the event that, for any reason, said assignments required herein are not hereafter executed by the Operator and provided to GIBRALTAR, then the execution of this agreement by the Operator shall serve as and be deemed equivalent to said assignments, the same as if they had been hereafter separately executed.

4. In March of 1982, the original principals of the debtor assigned their interests to Michael Nantista, who continued to operate under the Gibraltar franchise with the consent and agreement of Gibraltar, as franchisor. Obviously, Mr. Nantista was not an original party to the franchise agreement, the lease or the assignment of lease, since he took over management and ownership of the debtor's business more than two years later.

5. Gibraltar discovered in May of 1983, that Mr. Michael Nantista, the president of the debtor-franchisee, had removed all signs bearing the "Gibraltar" trade name and continued to do business at the premis-

es on Route 304, Bardonia, New York, as Clarkstown Transmissions Corp. In Gibraltar's state court action seeking to terminate the franchise and remove the debtor from the premises, the state court judge found that the Gibraltar signs were pulled down so that the debtor could save the $400 per week in advertising and royalties which it was obligated to pay to Gibraltar. The court found that the actions by the debtor-franchisee in removing Gibraltar's name, as franchisor, from the various signs clearly violated the terms of the June 12, 1979 franchise agreement.

6. In a decision, dated August 16, 1984, the New York Supreme Court, Nassau County, ruled that Gibraltar was "entitled to a judgment declaring that by reason of franchisee's violation of the Agreement, it is entitled to possession of the premises known as 163 Route 304, Bardonia, New York and directing defendant to vacate same." On October 12, 1984, a judgment to this effect was entered in favor of Gibraltar in the New York Supreme Court, Nassau County. An execution to the sheriff of Rockland County, New York, directing that possession of such premises should be given to Gibraltar, was issued on October 19, 1984.

7. On October 24, 1984, the Sheriff's Department, County of Rockland, served on the debtor a 72 hour notice to vacate the premises in question.

8. On November 8, 1984, the debtor filed with this court its petition for reorganizational relief under Chapter 11 of the Bankruptcy Code.

## DISCUSSION

Subscribing to the strategy that offense is the best defense, the debtor asserts in opposition to Gibraltar's request for relief from the automatic stay for eviction purposes that "the debtor does reject the executory franchise contract with Gibraltar Transmissions and the reassigned lease which was given to Gibraltar as security for non-payment of various obligations. The Debtor however reaffirms the underlying lease." In essence the debtor recog-

nizes that its status as a Gibraltar franchisee was terminated before it commenced its chapter 11 case, but wishes to keep alive and have the benefit of the lease which was an integral part of the franchise agreement and which the debtor had previously assigned to Gibraltar as security for its performance under the now terminated franchise agreement.

The debtor relies heavily upon the case of *Hardway Restaurant, Inc. v. Once Upon A Stove, Inc. (In re Hardway Restaurant, Inc.)*, 31 B.R. 322, 10 B.C.D. 1063 (Bkrtcy.S.D.N.Y.1983). There the debtor purchased a restaurant from the defendant, Once Upon A Stove, Inc. In connection with the purchase, the debtor executed lease assignments to the defendant to secure payment of the purchase price of the restaurant. The lease assignments were not recorded as authorized by Article 9 of the New York Real Property Law. When the debtor defaulted in making the purchase payments, the defendant notified the debtor that the assignments of the leases for security were deemed operative. The defendant then demanded that the debtor vacate the leased premises. When the defendant commenced an action in the state court for possession, the debtor filed a petition for reorganization under Chapter 11 of the Bankruptcy Code. Thereafter, the debtor initiated an adversary proceeding and sought to exercise the powers of a trustee pursuant to 11 U.S.C. § 1107(a) and the powers of a bona fide purchaser under 11 U.S.C. § 544(a)(3) so as to avoid the assignments of its leases for security to the defendant because they were not recorded under New York's recording statute, Real Property Law § 291. The court held that actual notice of unrecorded assignments could not bar the debtor's status as a hypothetical bona fide purchaser under 11 U.S.C. § 544(a) from avoiding the defendant's unrecorded assignments of leases for security.

The debtor's reliance upon the *Hardway Restaurant, Inc.* case is misplaced because in that case the assigned leases were operative at the time the debtor commenced its

chapter 11 case and continued in effect until avoided pursuant to 11 U.S.C. § 544(a). In this case, the debtor's response to Gibraltar's request for relief from the automatic stay, that it desires to avoid the unrecorded lease assignment to Gibraltar, does not raise a meritorious defense to the motion to lift the stay. The debtor's lease, which it assigned to Gibraltar as security for its performance under the franchise agreement, was inextricably incorporated in the franchise agreement and was coextensive with the franchise. The debtor's right to possession under the lease was terminated and its franchise operations were enjoined on August 16, 1984, prior to the time that the debtor commenced its chapter 11 case on November 8, 1984. Indeed, the debtor does not seek the comfort of the franchise agreement and declares that it is rejected. However, such selective rejection is of no consequence since the franchise agreement and the debtor's right to possession under the lease were judicially terminated before the commencement of this case.

The debtor's status in this case is not unlike that of the debtor in *Matter of GSVC Restaurant Corp.*, 3 B.R. 491, 494, 6 B.C.D. 134, 135 (Bkrtcy.S.D.N.Y.), *aff'd*, 10 B.R. 300, 6 B.C.D. 295 (S.D.N.Y.1980), where this court said:

> However, the debtor's right to possess the property in question has been judicially determined as demonstrably nonexistent; resulting in the state court ordered warrant of eviction. Assuming, nevertheless, that the debtor's de facto possession is a sufficient nexus to invoke the protection of the automatic stay under 11 U.S.C. § 362, such stay is subject to termination or modification by the court for grounds delineated in subsection (a)(3) of 11 U.S.C. § 362....

> \*   \*   \*   \*   \*   \*

At the trial the debtor presented no evidence whatsoever concerning the issue of adequate protection of the plaintiff's interest in the property. Since it was the debtor's burden to provide or propose a method of protection, the failure to meet this burden necessitates a modification of the automatic stay. (citations omitted).

In this case, the debtor originally recognized in the franchise agreement that the franchised business "was located and selected with the aid of Gibraltar, who also assisted in negotiating the lease terms for the site premises" and that the lease was assigned to Gibraltar as security for the debtor's performance under the franchise agreement. The lease was an integral part of the franchise agreement by its incorporation in the agreement and was coextensive with it. Gibraltar's entitlement to possession under the lease by reason of its right to protect its franchised trade name at the business location in question was sustained by the New York Supreme Court on August 16, 1984. In order to block Gibraltar from pursuing its possessary interest under the assigned lease and from furthering its right to exploit the trade name "Gibraltar" at the location in question, the debtor must come forward and satisfy the burden imposed under 11 U.S.C. § 362(g)(2), by providing adequate protection within the meaning of 11 U.S.C. § 361. This the debtor has failed to do. On the contrary, the debtor wishes to pursue a competing automobile transmission repair business on the franchised site, free from the franchised obligations, including the payment of royalties, and based upon naked possession. To accomplish this objective, the debtor would have this court disregard the fact that it previously assigned the lease for the premises to Gibraltar as security for the debtor's performance under the franchise. In sum, the debtor seeks to be put in a better position than it occupied before the commencement of its chapter 11 case and fails to regard the proprietary rights of Gibraltar, to whom no adequate protection is offered. This position is inconsistent with the relief afforded under the automatic stay, as expressed in 11 U.S.C. § 362(a).

## CONCLUSIONS OF LAW

1. The debtor has failed to sustain its burden imposed under 11 U.S.C. § 362(g)(2)

of establishing why Gibraltar should be precluded by the automatic stay from enforcing its rights under the franchise agreement and the assigned lease regarding the premises in question.

2. Gibraltar's request for an order modifying the automatic stay in order to permit Gibraltar to enforce its contractual and judicially determined right to possession of the transmission repair shop occupied by the debtor, is granted.

SUBMIT ORDER on notice.