GUILA LEE, Plaintiff, *v.* THEODORE D. BEAGELL and Others, Defendants.

Supreme Court, Special Term, Broome County, May 3, 1940.

*Becker & Mossew* [*Victor D'Adamo* of counsel], for the plaintiff.

*Harry S. Travis*, for the defendants.

DEYO, J. A somewhat novel situation is presented in this action to redeem mortgaged premises. It seems that in 1936 the plaintiff, for a valuable consideration, purchased the property involved from the defendants Theodore and Florence Beagell. The plaintiff received a warranty deed and entered into possession. The deed, however, was not recorded. Some three years later, on March 18, 1939, the plaintiff borrowed fifty dollars from Mr. Beagell, which she agreed to repay in weekly installments of two dollars and fifty cents, together with interest at six per cent, and as security for the loan she deposited the title deed, still unrecorded, with Mr. Beagell. It was apparently understood that if the plaintiff failed to repay the loan the property would belong to Mr. Beagell. The plaintiff did not pay, and on September 8, 1939, after the twenty-week period had expired, Mr. and Mrs. Beagell executed and delivered a deed of the same premises to the defendants George and Hazel Card, with the understanding that if the plaintiff paid off the indebtedness on or before February 1, 1940, the deed to the Cards would be destroyed and the deed to the plaintiff would be redelivered to her. The defendants say that the plaintiff had knowledge of this agreement and the court assumes that to be a fact. The plaintiff failed to pay the indebtedness and on February 2, 1940, the deed to the Cards was recorded. No tender of the amount due on the loan was made until after February 2, 1940. The plaintiff remained in possession of the premises throughout and is still in possession of them. Under these facts both parties move for judgment. The plaintiff maintains that the transaction constituted an equitable mortgage in favor of the defendants. The defendants maintain that on failure to pay the indebtedness they became vested with the title to the premises.

The execution and delivery of the deed by the Beagells on June 29, 1936, vested title to the premises in the plaintiff. No further act was necessary. The failure to record the deed in no way affected its validity as between the parties nor as against any other party excepting a purchaser in good faith, for a valuable consideration and without notice of the unrecorded conveyance. (Real Prop. Law, § 291; *Dingley* v. *Bon*, 130 N. Y. 607; *Castelli* v. *Burns*, 158 App. Div. 913; *Baker* v. *German-American Ins. Co.*, 133 id. 496; *Fox* v. *Sizeland*, 170 Misc. 390, 401.)

The redelivery of the deed to Beagell did not divest the plaintiff of the title she had thus acquired, since it is well established by statute and by the decisions that title cannot be conveyed except by a written instrument or by operation of law. (Real Prop.

Law, § 242.) "A deed once delivered and accepted, its redelivery by the grantee will not revest the legal title in the grantor." (*Herrmann* v. *Jorgenson*, 263 N. Y. 348, 354.)

What then did Beagell acquire when the title deed was deposited with him as security for the loan? It is axiomatic that a conveyance absolute in form, if intended merely as security for an obligation, will be construed in equity as a mortgage. (*Peugh* v. *Davis*, 96 U. S. 332; *Nestell* v. *Hart*, 202 N. Y. 280; *Mooney* v. *Byrne*, 163 id. 86; *Thompson* v. *Lewis*, 182 App. Div. 556.) The defendant admits this principle of law, but insists that it applies only in those cases where the equitable mortgagor executed a conveyance. True, that is the situation in the ordinary case, but the court does not deem it to be an essential prerequisite to the granting of the relief herein sought. "The whole doctrine of equitable mortgages is founded upon that cardinal maxim of equity which regards that as done which has been agreed to be done, and ought to have been done. In order to apply this maxim according to its true meaning the court will treat the subject-matter, as to collateral consequences and incidents, in the same manner as if the final acts contemplated by the parties had been executed exactly as they ought to have been, and not as the parties might have executed them, always regarding the substance and not the form of the transaction." (*Sprague* v. *Cochran*, 144 N. Y. 104, 114.)

No authority is presented and the court has found none which limits the doctrine of equitable mortgages to those instances where the equitable mortgagor has executed a written instrument. In fact, courts of equity have found an equitable mortgage to exist in a variety of cases, even though no writing exists. (*Sprague* v. *Cochran*, *supra*; *Smith* v. *Smith*, 125 N. Y. 224.) Although the creation of equitable mortgages by the deposit of title deeds has not been recognized in this State to the extent that it is in England, nevertheless, the courts have not hesitated to utilize this method of attaining justice when the equities so require. (*Jackson* v. *Parkhurst*, 4 Wend. 369; *Rockwell* v. *Hobby*, 2 Sandf. Ch. 9; *Carpenter* v. *Black Hawk Gold Mining Co.*, 65 N. Y. 43, 51.)

In *Chase* v. *Peck* (21 N. Y. 581) Judge DENIO said (p. 584): "The courts of equity in this State have adopted the general doctrines of the English Chancery upon this subject, as upon many others. The cases of a mortgage created by a writing not sufficient to convey the premises, or by a deposit of title deeds, have not been frequent with us; but the doctrine has been applied in a few instances, and I do not find any judgment or *dictum* by which it has ever been questioned."

The question is one of intention to be decided from a consideration of the whole transaction and not from any particular feature of it. (90 A. L. R. 953.) Clearly, it was the intention of the parties that Beagell should have a lien on the property as security for the debt, at the very least. The plaintiff remained the owner of the legal estate and Beagell had a lien in the nature of an equitable mortgage. This lien could not be changed into a legal estate by an agreement of the parties to cut off the right of redemption. (*Thompson* v. *Lewis*, 182 App. Div. 556.) The equity of redemption is inseparably associated with the mortgage be it legal or equitable, and cannot be cut off or impaired by any subsequent acts of the equitable mortgagee. (*Mooney* v. *Byrne*, *supra*; *Massari* v. *Girardi*, 119 Misc. 607.) Since the defendants George and Hazel Card had knowledge that the title deed was deposited with Beagell as security only, and since the plaintiff was at all times in possession of the premises, they could not and did not become *bona fide* purchasers in good faith and they succeeded only to the rights which Beagell had in the premises, which was a lien in the nature of an equitable mortgage. An action to redeem may be maintained against a mortgagee, whether in or out of possession. (*Reich* v. *Cochran*, 213 N. Y. 416; *Sumner* v. *Sumner*, 217 App. Div. 163.)

Judgment will be granted directing the defendants to execute, acknowledge and deliver to the plaintiff a good and sufficient deed or conveyance of their interest in said property upon payment by the plaintiff to the defendants of the amount still due and unpaid upon the loan with interest on same, together with the costs of this action. If the parties cannot agree upon the amount due upon the loan, an accounting may be had which will be referred to an official referee.

Judgment on the pleadings in accordance with the foregoing. No motion costs are allowed either party.