OPINION OF THE COURT
Leon D. Lazer, J.
To what extent may marginal notations placed on recorded instruments by recording officers be relied upon by purchasers or encumbrancers of real property? The question arises from the extraordinary facts which underlie the instant mortgage foreclosure action in which the plaintiffs have moved for summary judgment. The pertinent events commenced with a loan of $25,000 from Hampton Funding Co. (Hampton) to the defendant Indian Hills Management Corp. (Indian Hills), pay *635 ment of which was guaranteed by defendants Thomas B. and Linda Donovan. As security for their guarantee, the Donovans executed a mortgage to Hampton on two pieces of property in Northport, New York, identified here as Parcels 1 and 2. The mortgage was recorded in the Suffolk County Clerk’s office on July 29, 1972 in mortgage liber 6429, page 130. On September 20, 1972 Indian Hills paid Hampton $10,000 and obtained a release of Parcel 2, a transaction which was memorialized by recording of the release instrument and noted on the margin of the recorded mortgage by the County Clerk.
In October of 1972 the Donovans, who resided at Parcel 1, informed Hampton that they intended to purchase another home at Monroe Street in Northport and requested that Parcel 1 be released from the lien of the mortgage and that the Monroe Street property be substituted for it. Hampton agreed and the substitution was effectuated by the execution of a release instrument and a separate agreement which provided for the release of Parcel 1 from the lien of the mortgage and the substitution of the Monroe Street property in its place. Although the face page of the substitution agreement contains no title which would serve to characterize the instrument, the legal back contains the designation "Modification Agreement.” The agreement was recorded in liber 6591, page 136 of mortgages on December 26, 1972 and indexed in the alphabetical mortgagor-mortgagee index book for the Town of Huntington as an "Agrt” so that it appears there as follows:
Date of Record Mortgagor Mortgagee Liber Page
Month Year
Agrt
Dec 26 1972 Donovan Thomas Hampton Funding 6591 136
B. & ors Co. d/b/a
As in the case of the release of Parcel 2, the County Clerk made an entry in the margin of the recorded mortgage in liber 6429, page 130 as follows:
Mod Agt L 6591 mp 136 Rel L 7472 cp 253
In addition, the clerk noted the release and the term "Mod. Agt.” in the "Notation Book” which summarizes all changes in recorded mortgages.
On December 12, 1973 Hampton assigned its mortgage to its principals, the current plaintiffs, by instrument recorded in *636 mortgage liber 6591, page 183, a transaction which also was noted in the margin of the recorded mortgage.
On November 26, 1976 the Donovans conveyed the Monroe Street property to the defendants Vance R. Harvey, Jr. and Victoria B. Harvey, Mrs. Donovan’s parents. At the same time the Harveys gave a mortgage in the sum of $51,300 to the defendants Dollar Federal Savings and Loan Association (Dollar Federal) and another mortgage in the amount of $11,500 to the defendant David Gold, all of which instruments were then recorded. When payments on the Indian Hills loan ceased in June of 1976, the plaintiffs instituted this action to foreclose their mortgage on the Monroe Street property, joining the Harveys, Dollar Federal, Gold, Indian Hills and the Donovans as defendants, it is apparent that the Harveys, Dollar Federal and Gold were unaware of the plaintiffs’ mortgage when they entered into the transactions referred to.
The Harveys, Dollar Federal and Gold have answered the complaint asserting an affirmative defense to the effect that the agreement by which the Monroe Street property was mortgaged "was entitled 'MODIFICATION AGREEMENT’” and neither its title nor its contents included the word or term "spreader” or "spreader agreement.” According to these defendants, plaintiffs’ use of the designation "modification agreement” on the legal back resulted in the County Clerk placing the notation "Modification Agrt. [sic] L 6591, mp 136” on the original recorded mortgage. Alleging that the custom and usage where a lien is spread to another property is to call the agreement which effectuates that result a "spreader,” the defendants argue that the County Clerk’s notation was inaccurate, erroneous, misleading, inadequate and insufficient notice to subsequent bona fide purchasers or mortgagees.
Although the affirmative defense in the answer concludes with allegations that defendants are bona fide owners of the fee and of mortgages on the property, they do not seek any declaration that the fee is not subject to the Hampton mortgage or that the Dollar Federal and Gold mortgages are superior liens to the Hampton mortgage; what they do seek is dismissal of the complaint as well as extensive relief based upon the claim of fraud against the defendants Donovan and Indian Hills.
Attached to the papers in response to the motion are eight identical mimeograph-style affidavits signed by persons who *637 identify themselves as title company examiners, each of whom declares:
"That if I was searching the title on premises 'X’, and if I was searching for existing mortgages on such premises 'X’, and if I found a mortgage in which the owner of premises 'X’ was the mortgagor, but which such mortgage covered premises 'Y’ and did not mention premises 'X’, and if there were a notation on such mortgage on premises 'Y’, 'see modification agreement Liber Page —’, then I woul.d not consider it necessary to examine the modification agreement referred to in such notation.
"That the reason why I would not consider it necessary to examine such modification agreement, is because custom and usage in the title insurance business is as follows: 'The term "modification agreement” is applicable to an agreement which modifies and/or amends the terms of an existing mortgage; and such term is not applicable to an agreement which extends or "spreads” the existing mortgage to an additional parcel of property. When an agreement includes in its terms the extension or "spreading” of an existing mortgage to an additional parcel of property, the custom and usage in the title insurance business is to refer to such agreement as a "spreader agreement”.’ ”
In essence, then, it is these defendants’ position that the notation "Mod. Agt.” on the recorded mortgage relieved them of the obligation of examining the agreement so referred to.
Section 316-a of the Real Property Law provides that the Suffolk County Clerk shall prepare separate index books of conveyance and mortgages for each town (§ 316-a, subd 2) to be indexed alphabetically under the "first letter of the last name and first letter of the first name method” (§ 316-a, subd 7). Subdivision 6 of the statute reads as follows: "6. The entries made in said indexes in conformity with the requirements of this act shall for the purpose of notice be deemed and taken to be a part of the record of the instrument to which such entries respectively refer and shall be notice to such subsequent purchasers or encumbrancers to the same extent and with the like effect as the recording of such instruments in the office of said clerk now is or may be notice.”
Section 321 (subd 2, par [b]) of the Real Property Law provides that the recording officer "shall also record every other instrument relating to a mortgage” presented to him in *638 proper form and that he shall "enter a minute upon the record of the mortgage to which such instrument relates, indicating the nature of [the] instrument” and where it has been recorded. The statute does not mention a spreader agreement as such but subdivision 3 of section 321 does refer to instruments by which the liens of mortgages have been spread.
It is basic to title jurisprudence that the recording of an instrument affecting property is constructive notice to all subsequent purchasers and lienors of its existence and contents (People v Luhrs, 195 NY 377). It is the plain purpose of the recording statutes to give constructive notice of claimed interests in real property (Security Discount Assoc. v Lynmar Homes Corp., 13 AD2d 389) and a subsequent claimant is chargeable with notice of all that the record reveals (Tholemann v Stein, 259 App Div 27; Smith v Pure Strain Farms Co., 180 App Div 703). If there is sufficient notice contained in any deed or record which a prudent purchaser ought to examine to induce an inquiry in the mind of an intelligent person, he is chargeable with knowledge or a notice of the fact so contained (Cambridge Valley Bank v Delano, 48 NY 326).
The recording acts charge the purchaser with notice only of matters in the record; matters outside the chain of title do not constitute notice (Doyle v Lazarro, 33 AD2d 142, affd 33 NY2d 981; Tarbell v West, 86 NY 280; Ackerman v Hunsicker, 85 NY 43), and a purchaser is not normally required to search outside the chain of title in order to determine if it is defective Buffalo Academy of Sacred Heart v Boehm Bros., 267 NY 242). The chain of title to real property is the succession of deeds or other instruments by which title is traced back to its original source (Capper v Poulsen, 321 Ill 480; Maturi v Fay, 96 NJ Eq 472) and when the records of all transactions impinging upon a given piece of land are available through the pertinent indices the law assumes that a prudent purchaser will inspect them and treats him on the basis of his having knowledge of their contents whether he has seen them or not. The presumption is so strong under this type of constructive notice that the courts will not allow of its being contradicted. It includes an assumed knowledge of the transfer of title or of the creation of interests affected by the instrument as recorded and also of all information afforded by the recitals therein (4 American Law of Property, § 17.17; *639 McPherson v Rollins, 107 NY 316; Acer v Westcott, 46 NY 384; see, also, 6 Powell, Real Property, § 916).
It is axiomatic that a purchaser who has completed the examination of the basic conveyances comprising the chain of title must ascertain whether the property is encumbered by mortgages. Where the indices are alphabetical in nature, this is done by taking the name of each grantee in the chain and running the mortgagor-mortgagee index at least for the period of that grantee’s ownership (5A Warren’s Weed, New York Real Property, Title Examination, § 3.08). Such a search of the mortgagor-mortgagee index book by the answering defendants would have revealed the existence of the substitution agreement recorded in liber 6591, page 136 which subjected the Monroe Street property to the lien of plaintiffs’ mortgage. The defendants’ contention that the marginal notations on the recorded mortgage relieved them of the obligation to examine an agreement which was properly indexed is without warrant in law. An abstracter of title is not justified in relying simply upon marginal statements or index data or recitals of conclusions concerning matters elsewhere appearing of record (Ann. 28 ALR2d 891, 895; Wacek v Frink, 51 Minn 282; Crook v Chilvers, 99 Neb 684). Although mortgage extensions, assignments and other types of agreements are sometimes noted in the margin of the original recorded mortgage, "it is not safe for the examiner to rely upon these marginal notations, since there is a possibility of error or omission and the proper way is to run the official indexes” (5A Warren’s Weed, Title Examination, § 7.15) and to examine the instruments revealed thereby.
In sum, the answering defendants were charged with notice of every indexed and recorded transaction impinging on the Monroe Street title and therefore they were required to examine every instrument which emanated from "Donovan, Thomas B. & ors” during the period of the latters’ ownership of that property. The copies of the relevant pages of the mortgagor-mortgagee index submitted with the moving papers indicate that there were other transactions by the Donovans which surely required examination even though they may have been unrelated to Monroe Street. Nevertheless, the answering defendants chose to ignore the seminal principle that they were chargeable with notice of every fact affecting the title which would be discovered by an examination of the instruments underlying their grantee’s title (see Cambridge *640 Val. Bank v Delano, 48 NY 326, supra). As a consequence, they relied upon what they now describe as an erroneous marginal notation and eschewed reading the substitution instrument which was the subject of a separate item in the mortgage index. The fact that a group of professional title searchers in Suffolk County have sworn that it is their custom to rely upon marginal notations is immaterial. The notice imposed by the statute is such as is imputable from an opportunity to acquire knowledge coupled with the duty to seek it in the exercise of a reasonable degree of care and prudence (59 CJS, Mortgages, § 253). Both the opportunity and the duty existed here but it is apparent that the appropriate degree of care and prudence was not exercised. The entry in the mortgagor-mortgagee index referring to the substitution agreement is part of the record of the instrument itself, and, as such, it constitutes "notice to such subsequent purchasers or encumbrancers to the same extent and with the like effect as the recording” of the instrument (Real Property Law, § 316-a, subd 6). Therefore, the marginal notation could be utilized to expedite the locating of related instruments; it could not serve as a substitute for examining an agreement which was separately itemized in the index of mortgages.
The motion for summary judgment is granted.