VAN GRAAFEILAND, Circuit Judge:
 

 This is an appeal from an order of the United States District Court for the Southern District of New York (Sweet, J.) dismissing Corporación Venezolana de Fomen-to’s (CVF) appeals from two bankruptcy court orders. In the challenged orders, the bankruptcy court held that CVF could not base a claim against the estate of the debt- or, Vintero Corp., on an unperfected security interest in a ship, the S.S. Santa Rosa, owned by Vintero, and reduced CVF’s claim to the amount it received by virtue of a perfected lien on another ship.
 

 Because three of our opinions stemming from the underlying dispute between the parties already have been published,
 
 Vintero Corp. v. CVF,
 
 675 F.2d 513 (2d Cir.1982),
 
 CVF v. Vintero Sales Corp.,
 
 629 F.2d 786 (2d Cir.1980),
 
 aff'd after remand,
 
 712 F.2d 33 (2d Cir.1983), we may quickly summarize the salient facts. In 1975, Vintero purchased two ships, the S.S. Santa Rosa and the S.S. Bahama Star, for approximately $2 million, and sold them to a related corporation (Cariven) for approximately $17 million. In return for CVF’s guarantee of Cariven’s financing arrangements, Vintero gave CVF a security interest in each ship. The security agreements contained a non-recourse clause, which, in case of default, limited CVF to the security provided by the ships and protected the debtor from personal liability. Vintero received payments approximating $8 million before Cariven defaulted on its financial obligations and CVF prevented further payments from being made. Pursuant to its guarantee, CVF eventually had to pay about $12 million to satisfy Cariven’s obligations, most of which remains unrecovered.
 

 On November 4, 1977, Vintero filed a petition for voluntary arrangement under Chapter XI of the Bankruptcy Act of 1898, 11 U.S.C. § 722 (1976),
 
 [1]
 
 and became a debt- or-in-possession. Because of Cariven’s default, Vintero properly listed the Santa Rosa and the Bahama Star among its own assets. On June 15, 1979, Vintero commenced an adversary proceeding in the bankruptcy court seeking a declaration that CVF’s lien on the Santa Rosa was null and void as against Vintero, the debtor-in-possession, because CVF had allowed its perfected security interest in the ship to lapse. When CVF filed its financing statements, the Santa Rosa was berthed in Virginia. When the ship later was moved to Maryland, CVF failed to refile in accordance with the requirements of Maryland law. Under section 9-301(1)(b) of Maryland’s Uniform Commercial Code, CVF’s unperfected security interest therefore became subordinate to the rights of “a person who becomes a lien creditor without knowledge of the security interest and before it is perfected.”
 

 The bankruptcy court held that Vintero, as debtor-in-possession, had the status of such a creditor and granted Vintero summary judgment.
 
 See
 
 11 U.S.C. § 110(c). The district court affirmed. Both courts appear to have adopted Vintero’s argument that CVF lost its rights as a secured creditor upon the initiation of Vintero’s Chapter XI proceedings and that the non-recourse agreement precluded CVF from asserting any claim as a general creditor against Vintero. The issue before us on this appeal, therefore, is whether the combined effect of the filing lapse and the non-recourse clause precluded CVF from making any claim whatever in the estate of the Chapter XI debtor based on CVF’s security interest in the Santa Rosa. We conclude that it did not.
 

 When Vintero assumed the status of a debtor-in-possession, it became vested with the rights and powers of a trustee.
 
 Gardner-Denver Co. v. C.J. Haslam, Inc.,
 
 325 F.2d 208, 209 (2d Cir.1963). Accordingly, with respect to CVF’s lien, Vintero had
 
 *742
 
 all the rights that an ideal judicial lien creditor would have as of the filing of Vintero’s petition.
 
 See Lewis v. Manufacturers Nat’l Bank,
 
 364 U.S. 603, 605-07, 81 S.Ct. 347, 348-49, 5 L.Ed.2d 323 (1961). This included the right to move on behalf of Vintero’s creditors to invalidate the preference of CVF’s secured transaction, so that, insofar as the relationship among the claiming creditors was concerned, CVF assumed the status of an unsecured creditor.
 
 In re Martin Custom Made Tires Corp.,
 
 108 F.2d 172, 173 (2d Cir.1939);
 
 In re J.R. Cianchette & Sons Corp.,
 
 198 F.Supp. 740, 742 (D.Me.1961).
 

 However, although Vintero, as a debtor-in-possession, could exercise the rights of a lien creditor, it obviously was not one.
 
 See New York-Brooklyn Fuel Corp. v. Fuller,
 
 11 F.2d 802, 804 (2d Cir.1926). Filing requirements are for the benefit of third parties, not the debtor. U.C.C. § 9-301. “The security interest need not be perfected to be enforceable against the debtor; perfection is important only insofar as adverse third parties have entered the picture.” Clark,
 
 The Law of Secured Transactions Under the Uniform Commercial Code
 
 ¶ 3.2[2], at 3-8 (1980).
 
 See Aeroglide Corp. v. Zeh,
 
 301 F.2d 420, 421 (2d Cir.),
 
 cert. denied,
 
 371 U.S. 822, 83 S.Ct. 38, 9 L.Ed.2d 61 (1962);
 
 Lockhart v. Garden City Bank & Trust Co.,
 
 116 F.2d 658, 661 (2d Cir.1940);
 
 In re White Plains Ice Service, Inc.,
 
 109 F.2d 913, 914 (2d Cir.1940). Vintero was given the right to avoid CVF’s security interest in order to protect such third parties, not to create a windfall for Vintero itself.
 
 See Whiteford Plastics Co. v. Chase Nat’l Bank,
 
 179 F.2d 582, 584 (2d Cir.1950). Vintero suffered no prejudice because of the lapse in filing, and we see no reason why it should benefit from such lapse.
 
 See In re Fried Furniture Corp.,
 
 293 F.Supp. 92, 93 (E.D.N.Y.1968), aff
 
 'd,
 
 407 F.2d 360 (2d Cir.1969) (per curiam). To the extent that other creditors of Vintero are not affected adversely by enforcement of CVF’s security interest, there is no reason why such interest should not be enforced.
 
 Whiteford Plastics Co. v. Chase Nat’l Bank, supra,
 
 179 F.2d at 584.
 

 A non-recourse clause normally is intended to reduce the risks to the party granting the security interest if the secured party is later forced to foreclose on the security.
 
 See United States v. Stirling,
 
 571 F.2d 708, 715 (2d Cir.),
 
 cert. denied,
 
 439 U.S. 824, 99 S.Ct. 93, 58 L.Ed.2d 116 (1978). By precluding the secured party from getting a deficiency judgment against him, the debtor contains the risk of loss to the security alone; any other assets of the debtor will be preserved from the secured party’s later attempt to recover. If such a concern remains relevant after a debtor has declared bankruptcy, the non-recourse clause can perform its intended function if the secured party’s claim against the bankrupt is limited to the proceeds of the security.
 

 A bankruptcy court has broad equitable powers which may be invoked to see “that substance will not give way to form, that technical considerations will not prevent substantial justice from being done.”
 
 Pepper v. Litton,
 
 308 U.S. 295, 304-05, 60 S.Ct. 238, 244-45, 84 L.Ed. 281 (1939). Counsel for Vintero conceded at oral argument that the Santa Rosa may be worth as much as $10 million. If the value of the Santa Rosa were not included as part of Vintero’s plan of arrangement so as not to be intended for the benefit of Vintero’s creditors, there would be no reason in law or equity for CVF to lose the benefit of its lien.
 
 Whiteford Plastics Co. v. Chase Nat’l Bank, supra,
 
 179 F.2d at 584. If, as is more likely, the ship has to be sold in order to satisfy the claims of Vintero’s creditors, the debtor, of course, must be able to convey a title unencumbered by CVF's lien.
 
 See In re Dennis Mitchell Indus., Inc.,
 
 419 F.2d 349, 359-60 (3d Cir.1969). However, substantial justice and U.C.C. § 9-306 suggest that, as between CVF and Vintero, CVF’s claim against the identifiable proceeds of the sale properly may be termed a security interest,
 
 see Forde v. Kee Lox Mfg. Co.,
 
 437 F.Supp. 631, 634 (W.D.N.Y.1977),
 
 aff'd,
 
 584 F.2d 4 (2d Cir.1978), satisfaction of which would not violate the non-recourse clause. On the
 
 *743
 
 other hand, substantial justice and established law mandate that, despite its security interest, CVF shall not be entitled to priority of payment over other creditors but must share alike with them.
 
 See Stowers v. Mahon,
 
 483 F.2d 557, 560 (5th Cir.1973),
 
 rev’d on other grounds,
 
 416 U.S. 100, 94 S.Ct. 1626, 40 L.Ed.2d 79 (1974) (per curiam);
 
 In re Martin Custom Made Tires Corp., supra,
 
 108 F.2d at 173;
 
 In re B.W. Scott Book & Art Store, Inc.,
 
 12 F.Supp. 18, 19 (W.D.N.Y.1935); 4B
 
 Collier on Bankruptcy
 
 14th ed. ¶ 70.52[2].
 

 On the assumption that the Santa Rosa will be sold as part of Vintero’s plan of arrangement, we hold that CVF’s security interest shall attach to the identifiable proceeds of the sale, but that such security interest shall not entitle CVF to a priority of payment as against Vintero’s general unsecured creditors. Such disposition will protect the interests of Vintero’s creditors, will recognize the merit of CVF’s substantial claim, and will preclude the possibility of Vintero reaping an undeserved windfall.
 

 We vacate the order of the district court with instructions to remand to the bankruptcy court for further proceedings consistent with this opinion.
 

 [1]
 

 . The provisions of the Bankruptcy Act of 1898, rather than those of the Bankruptcy Reform Act of 1978, apply to proceedings initiated in 1977. Pub.L. No. 95-598, § 403(a). Unless otherwise indicated, all citations of the United States Code are to the 1976 version.