In re **KENNEDY INN ASSOCIATES,**
**Reorganized Debtor.**

**KENNEDY INN ASSOCIATES, Plaintiff,**

v.

**PERAB REALTY CORP., Defendant.**

**Bankruptcy No. 97 B 40148(TLB).**
**Adversary No. 97–8646A.**

United States Bankruptcy Court,
S.D. New York.

June 12, 1998.

Robinson, Brog, Leinwand, Greene, Genovese & Gluck, P.C., New York City by Fred B. Ringel, A. Mitchell Greene, for the Reorganized Debtor.

Greenwald & Rimberg, L.L.P., New York City by Wayne M. Greenwald, for Perab Realty Corp.

Law Office of Aaron Gelbwaks, New York City, by Aaron Gelbwaks, for Perab Realty Corp.

Office of the United States Trustee, New York City by Goodwin E. Benjamin.

## OPINION ON MOTIONS FOR SUMMARY JUDGMENT

TINA L. BROZMAN, Chief Judge.

At issue is whether the reorganized debtor, Kennedy Inn Associates, or instead Perab Realty Co. ("Perab") is entitled to possession of certain restaurant facilities located in a former transient hotel operated by the debtor. Although the debtor operated not only the hotel but the restaurant as well, Perab claims that the debtor did so in violation of Perab's interest. Both parties seek summary judgment.

### I.

The underlying documents have been stipulated to be authentic and admissible. Except where noted the facts are undisputed. Fourteen years ago, New Riviera Motel Company leased the Kennedy Inn Hotel and restaurant facilities to Rockaway of New York ("Rockaway") pursuant to a "ground lease" which was recorded in Queens County. Rockaway later subleased the bar, restaurant, coffee shop and banquet rooms (collectively, the "Restaurant") to Kahrahb Restaurants, Inc. ("Kahrahb") for twenty years. Rockaway subsequently assigned its interest in the ground lease to the debtor pursuant to a lease modification agreement and an assignment and assumption agreement, both of which were recorded in Queens County.

The following year, Kahrahb assigned its sublease of the Restaurant to Perab. Perab. at just about the same time, sub-subleased the Restaurant to the debtor for a five-year term expiring in 1996. Neither the assignment from Kahrahb to Perab nor the sub-sublease from Perab to the debtor was recorded. The sub-sublease granted the debtor an option to purchase Perab's interest in the sublease for the sum of $600,000.

When the debtor attempted to exercise the option to purchase Perab's interest, it rejected the debtor's attempt, delivering a three day notice of termination of the sub-sublease. This led to litigation which culminated in the drafting of a settlement agreement between the parties pursuant to which they agreed (i) that the debtor had exercised the purchase option validly and that a closing should occur

immediately at an enhanced purchase price of $660,000, of which $20,000 was to be paid at closing (in addition to other closing costs); (ii) the debtor would enter into a consulting agreement with Developers Advisory Corp. ("Developers"), an entity which is 100% controlled by the principal of Perab; (iii) the parties would discontinue the state court litigation: and (iv) they would exchange general releases which expressly excluded the debtor's obligations under a note and security agreement and Perab's covenants and warranties in the assignment of sublease to the debtor.

The settlement agreement further provided for the execution of a note from the debtor to Perab together with a security agreement. The security agreement required three documents to be pledged as collateral to secure the balance of the purchase price and held in escrow: (i) the sublease from Rockaway to Kahrahb, (ii) an assignment of the sublease by Perab and assumption of that sublease by the debtor to be executed at the closing, and (iii) a collateral lease assignment in blank signed by the debtor (collectively, items numbered i, ii, and iii are designated the "Collateral Documents"). The law firm of Dahan & Nowick, acting as escrow agent, would hold the Collateral Documents and, in the event of default, was to deliver the Collateral Documents to Perab so that Perab could conduct a public auction sale. The proceeds of such a sale were to be disbursed to satisfy the sale expenses and the debt to Perab, with any remaining balance being turned over to the debtor. In the "Remedies on Default" section of the security agreement, the parties agreed to limit Perab's remedy to the sale of collateral and expressly deleted any right by Perab to repossess or retain the collateral. *Security Agreement*, dated July 18, 1996, Section 2F ("Upon any default of the Debtor, ... the Secured Party shall have all the rights, remedies and privileges with respect to sale of the collateral...."). At the closing, the debtor also executed and delivered a UCC–1 financing statement that Perab's counsel requested and prepared. It is undisputed that neither the security agreement nor the financing statement was recorded. Perab executed New York State and City transfer tax returns and delivered them to the debtor, which returns indicated that Perab was the grantor with respect to a conveyance to the debtor of a leasehold interest. The transfer taxes of approximately $20,000 were paid out of the closing proceeds.

This is not suggest that all went smoothly at the closing. A wire transfer of the initial $200,000 payment required from the debtor could not be confirmed. To avoid delaying or rescheduling the closing, Perab's counsel drafted an escrow agreement which he and Dahan & Nowick, the escrow agent, signed providing that:

> The undersigned [Perab's counsel] will hold three checks totaling $200,000 until notified by Dahan & Nowick that wired funds have been received in NYC. Dahan & Nowick will hold all papers in escrow until checks are released by Dahan & Nowick.

The funds to cover the checks arrived in the account later that day.

The facts just recited are undisputed. The parties diverge, however, about what transpired at the closing. The debtor contends that Perab delivered the Collateral Documents to the debtor thereby conveying Perab's interest in the sublease to the debtor. In return, as required by the security agreement, the debtor says, it pledged the Collateral Documents as collateral and delivered them into escrow. In support of its interpretation, the debtor submits an affidavit of M. Marc Dahan, the assistant general secretary of the debtor's general partner, Kennedy Management Corp., and a partner in Dahan & Nowick, whose firm was the debtor's prepetition counsel as well as the escrow agent for the transaction. Perab, on the other hand, denies that it delivered the Collateral Documents to the debtor, contending instead that it intended to deliver the Collateral Documents directly into escrow without conveying any interest to the debtor. Perab further intended, it claims, to convey its interest in the sublease only upon full payment of the note by the debtor. This alternative version of Perab's intent comes from the affidavit of Aaron Gelbwaks, Perab's counsel, not from Perab itself.

Dahan & Nowick ceased rendering services to the debtor shortly after the closing. In January 1997, the debtor filed a chapter 11 petition, represented by new counsel. Although M. Marc Dahan continued as assistant general secretary to the debtor's general partner, his law firm did not render services to the debtor postpetition. Indeed, several months after the bankruptcy proceedings were commenced, Dahan & Nowick received a waiver from the debtor authorizing the firm to represent a party interested in purchasing the ground lease for the debtor's premises. At the same time. Dahan resigned as assistant general secretary. Dahan & Nowick continues to hold the Collateral Documents in escrow.

The chapter 11 proceedings, which were filed to assist the debtor to change from a transient hotel to a full-service franchise hotel, moved swiftly. Financing was obtained quickly to pay for renovations, a plan of reorganization was filed shortly thereafter, and confirmation took place about 5½ months after the chapter 11 filing. The plan provided for the debtor to reject all executory contracts as well as all unexpired nonresidential real property leases except for the debtor's ground lease for the Kennedy Inn and an agreement with Baisley Boulevard Restaurant LLC to operate the Restaurant.

## II.

The debtor asserts that it is entitled to summary judgment because: (i) under § 544(a)(3) of the Bankruptcy Code, standing in the shoes of a hypothetical *bona fide* purchaser, it may avoid the admittedly unrecorded, and hence unperfected, security interest asserted by Perab in the Restaurant: (ii) alternatively, if Perab continues to have an interest, whatever rights, if any, Perab may have to the Restaurant are subordinate to the rights of Equity Finance Ltd., the chapter 11 lender, as well as those rights of any past, present or future mortgagees on the ground lease: and (iii) the settlement agreement is not executory and thus was unaffected by the order confirming the debtor's plan

of reorganization, which deems rejected all executory contracts and unexpired leases for nonresidential property. According to the debtor, this means that, at best, Perab can assert a general unsecured claim for the debtor's breach of the settlement agreement but cannot assert any rights under § 365(h) of the Bankruptcy Code to regain use and enjoyment of the Restaurant.

Perab proffers as triable issues of material fact sufficient to preclude summary judgment for the debtor whether: (i) the settlement agreement between the debtor and Perab is executory; (ii) the debtor had actual or constructive notice of Perab's alleged interest in the Restaurant which would disable the debtor from asserting § 544(a)(3) avoidance powers; and (iii) the debtor has correctly ascribed the proper value to the Restaurant and the hotel.

Whereas Perab sought summary judgment in its favor, it has withdrawn that request. Tr. at 66–67 [1].

## III.

### A. Legal Standards for Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, a party is entitled to summary judgment when there is no "genuine issue of material fact" and the undisputed facts warrant judgment for the moving party as a matter of law. See Fed.R.Civ.P. 56(c); *Celotex v.. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The burden of demonstrating the absence of a material factual dispute rests on the moving party. *See Gallo v. Prudential Residential Svcs., Ltd.,* 22 F.3d 1219, 1223 (2d Cir.1994). Once that burden is met, the nonmoving party must present "significant probative supporting evidence" that a factual dispute exists. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510.

The court's role is not to try the issues of fact, but rather to determine whether issues

---

**1.** The trial transcript will be referred to as "Tr.," followed by the specific page upon which the cited testimony appears. "Exhibit" will refer to

the document that was admitted into evidence during the hearings.

exist to be tried. *See Balderman v. United States Veterans Admin.,* 870 F.2d 57, 60 (2d Cir.1989); *Donahue v. Windsor Locks Bd. of Fire Commissioners,* 834 F.2d 54, 58 (2d Cir.1987). All ambiguities must be resolved in favor of the party against whom summary judgment is sought. *See Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513–14; *Donahue,* 834 F.2d at 57, 60. If there is any evidence in the record from which a reasonable inference could be drawn in favor of the nonmoving party on a material issue of fact, summary judgment is improper. *See Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29, 37 (2d Cir.1994).

### B. Construction of Settlement Agreements

■■■ The Second Circuit has held that under New York law (which the parties agree is controlling) a settlement agreement in writing between parties represented by counsel is binding and equivalent to a contract. *Bank of New York v. Amoco Oil Co.,* 35 F.3d 643, 661–62 (2d Cir.1994) (citing cases and N.Y.C.P.L.R. § 2104 (McKinney 1976 & Supp.1994)). As such, it is "subject to the rules governing the construction of contracts." Joseph M. McLaughlin, *Practice Commentaries,* N.Y.C.P.L.R. C2104:1 p. 560; *see also Teitelbaum Holdings, Ltd. v. Gold,* 48 N.Y.2d 51, 421 N.Y.S.2d 556, 559, 396 N.E.2d 1029 (1979) (interpreting settlement agreement pursuant to rules governing construction of contracts). Generally, a settlement agreement will be construed in accordance with the intent of the parties, with unambiguous words and phrases given their plain meaning. Where, however, the meaning of a word or phrase is ambiguous, the court will examine the record as a whole in an effort to interpret the agreement so as to effectuate the intent of the parties and to reach a fair and reasonable result. *See Bank of New York v. Amoco Oil Co.,* 35 F.3d at 662 (citing cases).

### 1. Avoidance Rights under 11 U.S.C. § 544(a)(3)

The debtor argues that its avoidance powers under section 544(a)(3) of the Bankruptcy Code permit it to avoid any of Perab's unrecorded and unperfected interests under either the settlement agreement or the security agreement. Section 544(a)(3) provides in pertinent part that:

> a trustee shall have ... *without regard to any knowledge of the trustee or of any creditor,* the rights and powers of, or may avoid any ... obligation of the debtor that is voidable by ... (3) a bona fide purchaser of real property ... from the debtor against whom applicable law permits such transfer to be perfected. (Emphasis added.)

The debtor contends that at closing Perab conveyed its interest in the sublease to the debtor, which the debtor, in turn, pledged as collateral to Perab pursuant to the security agreement. The debtor points out that if Perab did not make the transfer, as it now claims, then the debtor had no collateral in its possession to pledge to Perab as the security agreement required. Dahan's affidavit describes the sequence of events at the closing as follows: the debtor and Perab executed the settlement agreement, certain of the Collateral Documents, a stipulation of discontinuance of the state court proceeding, mutual general releases, a consulting agreement between the debtor and Developers, New York City and State real property tax returns and a FIRPTA certificate. Developers delivered a letter directing the debtor to split the initial payment of $200,000 called for in the settlement agreement into three checks payable to New York City Real Property Transfer Tax in the amount of $17,350; New York State Real Property Transfer Tax in the amount of $2,640; and Developers in the remaining amount of $180,010.

Because confirmation of the transfer of the $200,000 payment from the debtor into the escrow account could not be obtained during the actual closing, Perab's counsel, Aaron Gelbwaks, prepared the handwritten escrow agreement quoted earlier in this decision. Later that day, receipt of the funds was confirmed and this temporary escrow was broken, with Dahan & Nowick releasing the documents and checks. Post-closing, Dahan & Nowick arranged for the filing of the tax returns and transmitted the checks to the appropriate taxing authorities as Developers had directed.

While not disputing the sequence of events as recited above, Perab contends that it never intended to deliver the Collateral Documents to the debtor but to the escrow agent to be held pending the payment by the debtor of the $640,000 note. In essence, Gelbwaks says, Perab intended to deliver the Collateral Documents to Dahan & Nowick in its capacity as escrow agent and not as the debtor's counsel. Thus, Perab argues, no transfer could occur until the note was paid in full. Tr. at 49. The debtor challenges the admissibility of this testimony arguing that, although Gelbwaks was present at the closing and drafted a number of the documents, he is incompetent to testify regarding Perab's understanding of the transaction including the pivotal question of whether a conveyance of the sublease was intended. Accordingly, I turn to this issue.

### a. Admissibility of Aaron Gelbwaks' Declaration on behalf of Perab

■ The pertinent portions of Gelbwaks' declaration state:

43. At no time was I or Perab given the impression that Marc Dahan was acting as the Debtor's representative, except in executing documents.

44. It was always the understanding of Perab and me that we were dealing with the Debtor's attorneys, Dahan & Nowick, not the Debtor.

. . .

46. At no time did I think that I or Perab was doing anything other than delivering the Documents to Dahan & Nowick as escrow agent.

. . .

57. It has always been Perab's understanding that the Documents were given to Dahan & Nowick to be held in escrow pending the payment, in full, of the Purchase Money Note.

*Declaration in Opposition to Kennedy Inn Associates' Motion for Summary Judgment,* dated August 25, 1997.

■ Whereas Fed.R.Civ.P. 56, made applicable here by Fed.R.Bankr.P. 7056, does not prohibit a party's attorney from submitting an affidavit, to be admissible, the affidavit must be made by a person with personal knowledge of the subject matter of the affidavit. *In re Lunan Family Restaurants,* 194 B.R. 429, 439 (Bankr.N.D.Ill.1996); *see* Fed.R.Civ.P. 56(e). A declaration as to a client's understanding or belief is not made on the personal knowledge of the affiant for purposes of Rule 56(e). *Spence v. Maryland Casualty Co.,* 803 F.Supp. 649, 664 (W.D.N.Y.1992), *aff'd,* 995 F.2d 1147 (2d Cir. 1993). Nor can the attorney's affidavit be a substitute for the client's personal affidavit or the affidavit of anyone else with personal knowledge offering relevant evidence in opposition to the motion for summary judgment. *Evans v.. Credit Bureau,* 904 F.Supp. 123, 127 (W.D.N.Y.1995).

■ Gelbwaks' declaration of Perab's intent is not admissible. Perhaps it would be different if Gelbwaks were testifying to a factual occurrence which he observed such as whether payment occurred or the documents were executed, *Lockwood v. Wolf Corp.,* 629 F.2d 603, 611 (9th Cir.1980); 11 *Moore's Federal Practice,* ¶ 56.14[1][d] at 56–163 to 56–165 (3d ed.1997), but insofar as Gelbwaks' declaration relates to the subjective understanding of Perab in entering into the settlement agreement, the declaration is not made on personal knowledge. *In re Wingspread Corp.,* 116 B.R. 915, 922 n. 8 (Bankr.S.D.N.Y. 1990) (citing cases), *aff'd,* 145 B.R. 784 (S.D.N.Y.1992), *aff'd,* 992 F.2d 319, 1993 U.S.App. Lexis 8055 (2d Cir.1993). Affidavits by attorneys that do not comply with the personal knowledge requirement cannot be used, as Perab attempts to do here, in opposition to a summary judgment motion. *In re Aquaslide N' Dive Corp.,* 85 B.R. 545, 548 (9th Cir. BAP 1987) (*citing Commercial Union Ins. Co. v. Albert Pipe & Supply Co., Inc.,* 484 F.Supp. 1153, 1157 (S.D.N.Y.1980)). The closing was attended by Massud Rahbar, the president of Perab, who actually signed the documents at the closing. Perab does not offer any reason for his inability to testify as to Perab's understanding of the transaction. Other than its counsel's inadmissible declaration, Perab has failed to submit an affidavit based on any competent party's personal knowledge as required by Federal Rule of Civil Procedure 56(e). *Sellers v. M.C.*

*Floor Crafters, Inc.,* 842 F.2d 639, 643 (2d Cir.1988); *Christophides v. Porco,* 289 F.Supp. 403, 407 (S.D.N.Y.1968) ("[A]n attorney's affidavit not upon personal knowledge or referable to sources of actual knowledge of the facts, leaves the record for purposes of summary judgment as it was without any affidavit at all.").

### b. *The Agreements Executed at the Closing*

■ Although Gelbwaks' affidavit is inadmissible to establish Perab's intention, it is theoretically possible that the documents themselves might support Perab's contention that no delivery of its interest in the sublease occurred at the closing. So we turn to the documents.

The settlement agreement executed at the closing states at paragraph 4:

*Closing.* As provided in the Amendment [of Restaurant Sublease], the parties are concurrently herewith closing the sale, transfer and assignment by Perab to [the Debtor] of Perab's Interest [as tenant in the restaurant lease].

Settlement Agreement at 3.

The security agreement expressly requires that the debtor grant and convey to Perab a security interest in the Collateral Documents, the only collateral called for by the security agreement. The language contained in that agreement indicates a present transfer, not a future or conditional one. *Security Agreement* at 1 ("Debtor hereby grants and conveys to [Perab] a security interest in, and mortgages to [Perab], (a) the property described in the schedule herein ... which collateral the Debtor represents will be used primarily in business or other use.").

Two of the Collateral Documents, the assignment and assumption of sublease and the assignment of proprietary lease, were signed at the closing by the principals of the debtor and Perab. The assignment and assumption of sublease states in relevant part.

Assignee [the Debtor] hereby accepts the foregoing assignment and assumes the performance of all of the terms, covenants, conditions and provisions of the Lease on the part of the Tenant [Kahrahb] thereun-

der to be performed, from and after the date hereof.

*Assignment and Assumption of Sublease* at 1–2.

The amendment of restaurant sublease states so far as pertinent:

At the Closing, taking place concurrently with the execution of this Amendment. Associates is executing and delivering to Perab the Note and Security Agreement. Perab is executing and delivering to Kennedy an Assignment of the Restaurant Lease (which Associates is accepting and assuming) and the parties are executing and delivering the New York City Real Property Transfer Tax Return and the New York State Combined Real Property Transfer Gains Tax Affidavit, Real Estate Transfer Tax Return and Credit Line Mortgage Certificate.

*Amendment* at p. 3. This amendment was signed by the principals of both the debtor and Perab at the closing.

The day after the closing, Dahan & Nowick filed the real estate tax returns with the City and State of New York. The City of New York sent a letter directly to Perab acknowledging receipt of the tax return. Interestingly, the letter reminds Perab that it is liable to pay the real estate transfer tax within 30 days after the "delivery of a deed, a leasehold grant, assignment or surrender even when the document will not be recorded." The letter further acknowledges receipt of a tax payment in the amount of $17,325 and notes that the grantee in the transfer is the debtor.

In light of all the language of present transfer in the documents quoted above and the payment and recording of transfer taxes, how could the debtor pledge the Collateral Documents, if, as Perab asserts, they had not been conveyed to the debtor? Perab's only answer is Gelbwaks's inadmissible description of Perab's understanding. The documents are of no assistance to Perab, for they do not indicate that Perab retained any possession or control over the Collateral Documents or the Restaurant. In short, Perab has failed to submit "significant probative supporting evidence" that a factual dispute

exists. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510.

As further proof of the illogic of Perab's unsupported position that no conveyance was intended, Perab executed transfer tax returns reporting that a conveyance occurred and authorized the payment of the tax from the $200.000 the debtor paid to Developers. Perab's counsel denigrates the legal effect of this transaction, claiming that Perab took these actions at the debtor's insistence because the debtor was concerned that Perab would be unable to pay the taxes later. Tr. at 72. Taking counsel at his word, this would mean that his client signed tax returns and prepaid taxes five years in advance (since, according to Perab, the conveyance would not occur until the note was fully paid in July 2001) of the not-so-insignificant sum of $20,-000 that it was under no obligation to pay, because, according to Perab, no transfer had occurred. This is a ludicrous interpretation of the documents which unambiguously state that a present transfer of interest from Perab to the debtor occurred upon the breaking of the temporary escrow.

The only conclusion which flows from the undisputed facts is that Perab conveyed its interest in the sublease in return for a security interest from the debtor that was collateralized by a promissory note and the Collateral Documents. Otherwise, the transaction could not work because the debtor would have lacked possession of the collateral it was required to pledge in compliance with the security agreement.

### c. Knowledge to be Attributed to the Debtor

Perab's next defense to the debtor's motion is that section 544 avoidance is unavailable because (i) the debtor should be charged with actual knowledge of Perab's security interest and not be permitted to hide behind the legal fiction of a bona fide purchaser, and

(ii) the chain of title would give constructive notice to a hypothetical bona fide purchaser that Perab had a security interest in the Restaurant.

### i. Actual Knowledge

■ Citing *In re Euro–Swiss Int'l Corp.*, 33 B.R. 872, 879 (Bankr.S.D.N.Y.1983), Perab argues that a debtor in possession can be barred from avoiding a security interest if it has actual knowledge of the interest. However, Perab's interpretation of *Euro–Swiss* and section 544 is incorrect. Section 544(a)(3) gives a debtor in possession the rights and powers of a *"bona fide* purchaser of real property" without regard to any actual "knowledge" possessed by it. *See Mosello v. ALI, Inc. (In re Mosello)*, 190 B.R. 165, 170 (Bankr.S.D.N.Y.1995). *Euro–Swiss* agrees with that proposition. 33 B.R. at 881.

Perab relies on a Fourth Circuit case, *In re Hartman Paving, Inc.*, 745 F.2d 307 (4th Cir.1984), for the proposition that the debtor should not be able to imbue itself with the status of a *bona fide* purchaser because it had actual knowledge of an encumbrance or infirmity to title. In *Hartman Paving*, the Fourth Circuit, in a split decision reversing the lower courts, held that because the debtor had actual knowledge of a procedural infirmity in a deed of trust at closing, West Virginia law estopped the debtor from attempting to use that defect to avoid the deed. There was no consideration by the court as to the impact of section 544 of the Bankruptcy Code.

The estoppel that Perab seeks to invoke against the debtor is simply unavailable under section 544 of the Bankruptcy Code. Perab's reliance on *Hartman Paving* is misplaced because that case has been overwhelmingly repudiated by the courts that have considered it, including the lower courts in the Fourth Circuit.[2]

---

**2.** Representative of those courts is the recent decision, *Glanz v. RJF Int'l Corp. (In re Glanz)*, 205 B.R. 750 (Bankr.D.Md.1997), in which the bankruptcy court noted that the *Hartman* decision did not refer to, or consider, the statutory language of section 544(a) precluding consideration of the knowledge of the trustee in the determination of the rights of a *bona fide* pur-

chaser or judicial lien creditor under state law. The bankruptcy court went on to say.

The *Hartman* bankruptcy case was filed shortly after the enactment of § 544(a) as part of the present Bankruptcy Code. Apparently this federal statutory provision ... was not argued or considered. Since the *Hartman* decision, virtually every court which has considered this

### ii. Constructive Knowledge

 But the inquiry does not end with actual knowledge. Although the debtor is relieved of any actual knowledge of the prior lien, it remains vulnerable to a charge that it possesses constructive knowledge. *See Mosello,* 190 B.R. at 170 (*citing In re Morse,* 30 B.R. 52, 54–55 (1st Cir. BAP 1983)); *McCannon v. Marston,* 679 F.2d 13, 16 (3d Cir. 1982); *In re Hardway Restaurant, Inc.,* 31 B.R. 322, 328–29 (Bankr.S.D.N.Y.1983). Under New York law, constructive notice may be revealed by: (i) an examination of the record, *Andy Associates v. Bankers Trust Co.,* 49 N.Y.2d 13, 424 N.Y.S.2d 139, 399 N.E.2d 1160 (1979), (ii) reasonable inquiry of those in actual possession, *Wardell v. Older,* 70 A.D.2d 1008, 418 N.Y.S.2d 196 (1979); or (iii) reasonable inquiry on the basis of all the circumstances. *In re Hardway,* 31 B.R. 322 (Bankr.S.D.N.Y.1983). *See generally In re Bygaph, Inc.,* 56 B.R. 596, 602–03 (Bankr. S.D.N.Y.1986).

The record, or chain of title, is composed of recorded deeds or other recorded instruments of transfer tracing the origin of the debtor's title to the property. *Elman v. Harvey,* 93 Misc.2d 634, 403 N.Y.S.2d 428–31 (Suffolk Co.1978). The debtor argues that the ground lease from Riviera to Rockaway and the assignment of the ground lease from Rockaway to the debtor would demonstrate an appropriate, continuous chain of title. Significantly, the debtor points out, both of these documents were recorded, unlike those between the debtor and Perab.

As the debtor points out, under New York law, one cannot perfect a security interest in real property without recording the instrument of conveyance; mere possession of the instrument is insufficient. N.Y. Real Property Law § 291 (McKinney 1997). Perab tries to avoid this restriction by claiming that it is routine business practice in New York not to record leases and assignments. *Euro–Swiss.,* 33 B.R. at 882. However, in that case Judge Buschman made that statement regarding leases in the context of finding that a hypothetical *bona fide* purchaser must be charged with a duty to inquire when faced with the open and visible possession of **third parties** in premises that it is seeking to purchase. *Id.* That is not the situation here. There is no open and visible possession of the Restaurant by any party other than the debtor that would compel inquiry. As a result, in reviewing the recorded documents, a hypothetical *bona fide* purchaser would not uncover any evidence of Perab's interest in the Restaurant.

As for possession, it is undisputed that the debtor has been operating the Restaurant since 1991. In addition, the debtor possessed not only the Restaurant but the entire building, which would lead a hypothetical third party to conclude reasonably that no other party had an interest in the Restaurant.

In a case from this district with similar facts, a debtor was an assignee of record of a lease and in possession of the premises. *In re Hardway Restaurant, Inc.,* 31 B.R. 322, 326 (Bankr.S.D.N.Y.1983). The debtor had pledged its interest in the lease as security to a creditor, which the creditor did not record. *Id.* deciding that the debtor could avoid this unrecorded interest, the bankruptcy court found that the debtor could successfully hide the creditor's lien interest, and because a hypothetical *bona fide* purchaser would not have notice as to the creditor's interest, the debtor could avoid the unrecorded, and hence, unperfected creditor's lien. *Id.; see also In re TMH Corp.,* 62 B.R. 932, 935 (Bankr.S.D.N.Y.1986). The facts here are

question has recognized the effect of the language found in § 544(a), which removes the trustee's actual knowledge as an element in the application of the rights of a *bona fide* purchaser or judicial lien creditor. *See In re Greenbelt Coop., Inc.,* 124 B.R. 465, 471 (Bankr.D.Md. 1991); *see also In re Tleel,* 876 F.2d 769, 772 (9th Cir.1989); *In re Sandy Ridge Oil Co.,* 807 F.2d 1332, 1335 (7th Cir.1986); *McCannon v. Marston,* 679 F.2d 13, 16–17 (3d Cir.1982); *In re Bandell Invs., Ltd.,* 80 B.R. 210, 212 (D.Colo.

1987); *In re Matos,* 50 B.R. 742, 745 (N.D.Ala. 1985); *In re Jones,* 77 B.R. 541, 545 (Bankr. N.D.Tex.1987), *In re MSC, Inc.,* 54 B.R. 650, 652 (Bankr.D.S.C.1985). Furthermore, the Fourth Circuit's reasoning in subsequent decisions is consistent with the conclusions in the cases cited immediately above. *See In re Kitchin Equipment Co.,* 960 F.2d 1242 (4th Cir.1992).

205 B.R. at 754–55 (some citations omitted).

very similar to both *Hardway* and *TMH*. The debtor is in possession of the hotel, including the Restaurant, pursuant to the assignment of the ground lease and can show a recorded chain of title leading to itself as lessee of the property. Where, as here, a debtor is in possession of the premises, is able to produce original documents of title and a current estoppel certificate from the landlord (which in this case would be the debtor), and the purchaser has no reason to question their validity, then no further inquiry is required. Because those documents make no reference to a security interest, a prospective buyer would not be given notice of an unrecorded lien interest. A hypothetical *bona fide* purchaser would have no reason to be on notice of another interest in the Restaurant other than the debtor's.

Perab attempts to distinguish *Hardway* and *TMH*, claiming that because the debtor does not possess an original conveyance document, namely, the assignment of sublease running from Perab to the debtor, a *bona fide* purchaser would be required to make further inquiry as to the interest of the debtor in the property and Restaurant. *See TMH Corp.*, 62 B.R. at 936. The debtor responds that the unavailability of the document is immaterial because a potential purchaser would not be aware of Perab's interest in light of the facts that Perab did not record its security interest and has no visible presence at the Restaurant. Tr. at 25–26. Perab focuses on the fact that the original assignment of restaurant sublease was placed into escrow, which makes it impossible for the debtor to produce it to a hypothetical buyer. According to Perab, a prospective purchaser would be required to inquire further, namely inquiring of Perab as to the debtor's interest in the assignment. Tr. at 49.

The fallacy in Perab's argument is that a purchaser would never learn of Perab's existence. The debtor could simply produce the assignment of the ground lease, which grants it possession of the entire building, and point to its continuous possession of the Restaurant since 1991. Because Perab did not record its security interest and has no visible presence at the Restaurant, *see, e.g., Euro–*

*Swiss*, 33 B.R. at 883 (party was in obvious possession of at least portion of premises and had its name on entrance door, indicia giving rise to duty of inquiry), a prospective purchaser would not have to inquire of the debtor whether other parties exist. Based on the debtor's possession of the Restaurant and its ability to show a chain of title confirming that it is the lessee of the entire building pursuant to the assignment of the ground lease by Rockaway, a hypothetical *bona fide* purchaser would conclude that the debtor was in possession of the Restaurant without any title infirmity. Therefore, under New York law the debtor may avoid Perab's unrecorded interest under § 544(b) of the Bankruptcy Code.

**4. Benefit to the Estate Pursuant to 11 U.S.C. § 550**

■■■ Perab's final, but strongest, argument is that lien avoidance under the strong-arm clause is intended solely for the benefit of creditors. Therefore, Perab urges, avoidance should not be permitted where it will operate as a windfall to the debtor without conferring any benefit on creditors.

Perab suggests that avoidance by the debtor is not necessary in order for it to meet its obligations to unsecured creditors under the confirmed plan, as the debtor presently has (and had even at the time of confirmation of the plan) the ability to meet its obligations to make the required payment of 10% to general unsecured creditors.

■■■ Avoidance powers are granted to a trustee or debtor in possession to benefit the estate. 11 U.S.C. § 550(a); *Wellman v. Wellman*, 933 F.2d 215, 218 (4th Cir.), *cert. denied*, 502 U.S. 925, 112 S.Ct. 339, 116 L.Ed.2d 279 (1991); *Vintero Corp. v. Corporacion Venezolana De Fomento (In re Vintero Corp.)*, 735 F.2d 740 (2d Cir.) (under the Bankruptcy Act, a debtor in possession may not exercise lien avoidance powers for the debtor's own benefit.), *cert. denied*, 469 U.S. 1087, 105 S.Ct. 592, 83 L.Ed.2d 702 (1984). As a result, a debtor's power to avoid transfers pursuant to § 544(a) is not unrestricted; equitable principles may be applied to bar lien avoidance where the avoidance does not accrue to the benefit of creditors but instead

creates a windfall for the debtor. *See Join–In Int'l (U.S.A.) Ltd. v. New York Wholesale Distributors Corp. (In re Join–In Int'l (U.S.A.) Ltd.),* 56 B.R. 555, 561 (Bankr. S.D.N.Y.1986); *Glanz v. RJF Int'l Corp. (In re Glanz),* 205 B.R. 750, 758 (Bankr.D.Md. 1997). What matters is whether creditors will receive "some benefit from the recovery of the [challenged transfers], even if it is not an increase in the amount the creditors will receive," *Vintero,* 735 F.2d at 742; *In re Centennial Indus., Inc.,* 12 B.R. 99, 102 (Bankr.S.D.N.Y.1981), but in the form of a debtor increasing its assets and improving its financial health so that its prospects of being able to satisfy its obligations to its creditors under the plan are improved. *See Funding Sys. Asset Mgmt. Corp. v. Chemical Bus. Credit Corp. (In re Funding Sys., Asset Mgmt. Corp.),* 111 B.R. 500, 523 (Bankr. W.D.Pa.1990) (citing cases).

It has long been the case in New York that whether a transfer is unrecorded is irrelevant as to its validity between the immediate parties. *See In re Hardway Restaurant, Inc.,* 31 B.R. 322, 330 (Bankr.S.D.N.Y.1983) (citing *Lee v. Beagell,* 174 Misc. 6, 19 N.Y.S.2d 613, 615 (Sup.Ct.1940) (failure to record a deed in no way affects its validity as between the parties) (citing cases)). Therefore, although the assignment of sublease from the debtor to Perab might not have been recorded as authorized by N.Y. Real Property Law Sections 290 and 291, it is still valid between the parties. This reasoning also applies where a party to the transfer attempts to avoid the transfer as fraudulent. *See In re Best Products, Co., Inc.,* 168 B.R. 35, 57 (Bankr.S.D.N.Y.1994) (because a fraudulent transfer is voidable by creditors only, it is not remarkable that, as between the parties to the transfer, the law regards the transfer as real and binding) (citing cases), *appeal dismissed,* 177 B.R. 791 (S.D.N.Y.1995), *appeal reinstated and aff'd,* 68 F.3d 26 (2d Cir.1995).

Here, the debtor argues that it expected the proceeds of the avoidance action to fund the recovery to general unsecured creditors under its confirmed plan. Although neither the feasibility nor confirmation of the plan was contingent upon success in the adversary proceeding, there is a material unresolved question of fact whether the estate's creditors would benefit from the avoidance action. For if there is no such benefit, then the debtor would not have standing to avoid the transfer. *See Dunes Hotel Assocs. v. Hyatt Corp. (In re Dunes Hotel Assocs.),* 194 B.R. 967, 985 (Bankr.D.S.C.1995): *Join–In Int'l,* 56 B.R. at 561.

Accordingly, summary judgment is DENIED. As a matter of law, the sublease was transferred to the debtor. However, the debtor's concomitant grant of an unrecorded and unperfected security interest may only be avoided if, at trial, the debtor proves that its creditors will be benefitted thereby. Should there be no benefit to the creditors, then the transfer of the security interest must be respected. SETTLE ORDER.